# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Stevens v. Village of Oak Brook*, 2013 IL App (2d) 120456**

| | |
|---|---|
| Appellate Court Caption | ANTHONY J. STEVENS, Plaintiff-Appellee, v. THE VILLAGE OF OAK BROOK, Defendant-Appellant (Illinois Municipal Retirement Fund, James W. Craig, in His Capacity as Village President, James Carson, Jeffrey Kennedy, Kathryn Manofsky, Moin Saiyed, Robert Sanford, Gerald Wolin, in Their Capacity as Village Trustees, David Niemeyer, in his capacity as Village Manager, and Eileen Donahue, in Her Capacity as Authorized Agent of the Village to IMRF, Defendants). |
| District & No. | Second District<br>Docket No. 2-12-0456 |
| Filed | May 9, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from plaintiff's employment with defendant village, first as a part-time building inspector and later as a full-time inspector, the trial court properly entered a writ of *mandamus* ordering the village to sign a form enabling plaintiff to receive credit toward his pension for the part-time work, even though he did not participate in the Illinois Municipal Retirement Fund during that time due to the village administrator's information that plaintiff was not eligible to participate, since plaintiff had a clear right pursuant to the Pension Code to receive a credit for his part-time years of service and the village had a clear duty to take the steps necessary for plaintiff to receive his full pension. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-MR-670; the Hon. Terence M. Sheen, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on<br>Appeal | Keri-Lyn J. Krafthefer, of Ancel Glink Diamond Bush DiCianni & Krafthefer, PC, of Warrenville, and David L. Ader, of Ancel Glink Diamond Bush DiCianni & Krafthefer, PC, of Chicago, for appellant.<br><br>Richard J. Tarulis, of Brooks, Tarulis & Tibble, LLC, of Naperville, for appellee. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices McLaren and Zenoff concurred in the judgment and opinion. |

## OPINION

¶ 1    The plaintiff, Anthony J. Stevens, worked as a part-time building inspector for the defendant, the Village of Oak Brook (the Village), from 1980 to 2000. During that time, he did not participate in the Illinois Municipal Retirement Fund (IMRF or the pension program) (40 ILCS 5/7-101 *et seq.* (West 2010)) because the Village's administrator informed him that he was not eligible to participate. From 2000 to 2008, he worked as a full-time building inspector and did participate in the IMRF. Prior to retiring, he requested that the proper Village official complete the form that would enable him to receive credit toward his pension for the part-time work he did between 1980 and 2000. The Village official refused to sign the necessary form. Four months after retiring, the plaintiff filed a complaint against the Village, asking that the proper Village official sign the necessary form. The trial court subsequently granted the plaintiff's motion for summary judgment and entered a writ of *mandamus*, ordering that the Village have the necessary form signed. The Village appeals from that order. We affirm.

¶ 2                          BACKGROUND

¶ 3    On April 28, 2009, the plaintiff filed a complaint for declaratory judgment and *mandamus*. The plaintiff alleged that the Village hired him as a part-time building inspector in February 1980. He worked approximately 1,040 hours per year. Although the Village was a participating employer in the IMRF, it failed to enroll him in the pension program. The Village never paid the employer contributions to the IMRF for his period of employment from 1980 to 2000. In April 2000, the Village hired the plaintiff as a full-time building inspector. At that time, the Village enrolled the plaintiff in the IMRF.

¶ 4    Prior to his retirement from the Village, plaintiff applied for IMRF benefits. Upon applying, he learned that he should have been enrolled in the IMRF in 1980. He then completed IMRF Form 6.05, which provides for omitted service credit verification.

However, the Village's authorized IMRF agent refused to sign that form to authorize the plaintiff to receive his omitted credit.

¶ 5 In the plaintiff's complaint for declaratory judgment and *mandamus*, the plaintiff sought IMRF credit for his 20 years of service as a part-time building inspector. The plaintiff alleged that the Village was obligated to sign IMRF Form 6.05 because it had a duty in 1980 to enroll him in the IMRF. The plaintiff further alleged that there was no authority or procedure for the Village to exclude him from participating in the IMRF. The plaintiff therefore requested that the trial court enter a writ of *mandamus* requiring the proper Village official to sign IMRF Form 6.05. The plaintiff also claimed that the Village had violated his equal protection rights under the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) because it had enrolled other part-time building inspectors in the IMRF but not him.

¶ 6 On October 8, 2009, the plaintiff filed a motion for summary judgment. On April 5, 2010, the trial court (Judge Kenneth Popejoy) denied the plaintiff's motion. The trial court found that there were outstanding factual issues that precluded entry of summary judgment in the plaintiff's favor.

¶ 7 On June 21, 2010, the plaintiff filed a first amended complaint for declaratory judgment and *mandamus*. On July 26, 2010, the Village filed its answer and raised eight affirmative defenses. The Village asserted that the plaintiff was not eligible for service credit from 1980 to 2000 because he had not elected to participate in the pension program. The Village further alleged that the plaintiff's request for retroactive service credit was untimely because he should have requested enrollment in the IMRF in 1980. Alternatively, the Village argued that, if the plaintiff was entitled to retroactive service credit, the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2010)) (the Pension Code) provided that he was entitled to no more than 50 months of credit. On March 21, 2011, the Village filed an amended answer and raised an additional 10 affirmative defenses.

¶ 8 On October 3, 2011, the plaintiff filed a motion for summary judgment on his amended complaint. On December 13, 2011, following a hearing, the trial court (Judge Terence Sheen) granted the plaintiff's motion for summary judgment.[1] The trial court explained that, under the plain and ordinary language of the Pension Code, the plaintiff's participation in the IMRF was mandatory for those years he worked more than 600 hours per year for the Village; therefore, the Village was required to enroll him in the pension program. Because the plaintiff's participation in the IMRF was mandatory, the 50-month retroactive service credit limitation did not apply to the plaintiff because that provision applied only to people who could voluntarily decide to participate in the IMRF. The trial court further found that, because it was not clear in 1980 and 1981 that the Village anticipated that the plaintiff would work more than 600 hours per year, he was not entitled to retroactive credit for those two years. However, he was entitled to credit from 1982 to 2000. Because the plaintiff was entitled to credit, the trial court determined that a writ of *mandamus* was appropriate because the Village's authorized IMRF agent had a nondiscretionary duty to sign Form 6.05.

[1]The case was reassigned from Judge Popejoy to Judge Sheen at the beginning of 2011.

¶ 9    In its ruling, the trial court denied the plaintiff's equal protection claim. The trial court found that the facts did not clearly establish that the Village had discriminated against the plaintiff. The trial court also rejected the Village's claim that the plaintiff's action was barred by the statute of limitations and the doctrine of *laches*. The trial court found that it did not have to decide whether a 5-year statute of limitations (applicable to unwritten contracts) or a 10-year statute of limitations (applicable to written contracts) applied, because the plaintiff had filed his lawsuit approximately one year after being denied his omitted service credit. The doctrine of *laches* did not apply because the plaintiff did not unreasonably delay bringing his lawsuit.

¶ 10    On December 21, 2011, the plaintiff filed a motion to reconsider. The plaintiff argued that the trial court should have ordered that he receive 20 years of retroactive service credit rather than just 18 years. He also argued that the trial court erred in denying his equal protection claim. On April 2, 2012, following a hearing, the trial court denied the plaintiff's motion to reconsider. The plaintiff thereafter filed a timely notice of appeal and the Village filed a timely notice of cross-appeal.

¶ 11    On June 20, 2012, after the plaintiff failed to comply with this court's order to file his appellant's brief in a timely fashion, we ordered that his case be dismissed. The result of our order was that the Village, which had previously been the cross-appellant, became the appellant and the plaintiff became the appellee.

¶ 12                                                ANALYSIS

¶ 13    The Village's first contention on appeal is that the trial court erred in its interpretation of section 7-137 of the Pension Code (40 ILCS 5/7-137 (West 2010)) and article XIII, section 5, of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5). The Village insists that, contrary to what the trial court determined, it was not mandatory that a government employee, like the plaintiff, participate in the IMRF. Rather, the plaintiff could participate only if he voluntarily chose to do so and to make the requisite contributions to that program.

¶ 14    The Village's argument requires us to interpret parts of both the Pension Code and the Illinois Constitution. The primary purpose of statutory construction is to determine and give effect to the legislature's intent, while presuming that the legislature did not intend to create absurd, inconvenient, or unjust results. *In re B.L.S.*, 202 Ill. 2d 510, 514-15 (2002). The best indication of the legislature's intent is the language of the statute. *In re Marriage of Lindman*, 356 Ill. App. 3d 462, 466 (2005). If the language of the statute is clear, there is no need to resort to other aids of statutory construction. *Id.* The legislature's use of the word "shall" is generally regarded as indicating a mandatory, and not merely a directory, intent. *Schultz v. Performance Lighting, Inc.*, 2013 IL App (2d) 120405, ¶ 13. Further, we note that we interpret the Illinois Constitution the same way as we would a statute. See *People v. Tisler*, 103 Ill. 2d 226, 254 (1984) (Ward, J., concurring) ("[A] court, in interpreting a constitution, is to ascertain and give effect to the intent of the framers of it and the citizens who have adopted it.").

¶ 15    Section 7-137 of the Pension Code provides in pertinent part:
        "Participating and covered employees.

(a) The persons described in this paragraph (a) shall be included within and be subject to this Article and eligible to benefits from this fund, beginning upon the dates hereinafter specified:

1. Except as to the employees specifically excluded under the provisions of this Article, all persons who are employees of any municipality (or instrumentality thereof) or participating instrumentality on the effective date of participation of the municipality or participating instrumentality beginning upon such effective date.

* * *

(b) The following described persons shall not be considered participating employees eligible for benefits from this fund, but shall be included within and be subject to this Article (each of the descriptions is not exclusive but is cumulative):

1. Any person who occupies an office or is employed in a position normally requiring performance of duty during less than 600 hours a year for a municipality (including all instrumentalities thereof) or a participating instrumentality. ***

2. Any person who holds elective office unless he has elected while in that office in a written notice on file with the board to become a participating employee;

3. Any person working for a city hospital unless any such person, while in active employment, has elected in a written notice on file with the board to become a participating employee and notification thereof is received by the board[.]" 40 ILCS 5/7-137 (West 2010).

¶ 16 The plain language of section 7-137 of the Pension Code provides that it "shall" apply to all municipal employees, except for a few exceptions that are not applicable here. This language clearly indicates that the plaintiff was eligible for pension benefits because he was working for the Village as a municipal employee.

¶ 17 We note that our interpretation is consistent with how the IMRF has interpreted section 7-137 of the Pension Code. Although the IMRF is not an administrative agency and does not have formal regulations promulgated under the Illinois Administrative Code, its board of trustees (Board) has authority to make "administrative decisions on participation and coverage, which are necessary for carrying out the intent of this fund in accordance with the provisions of this Article." 40 ILCS 5/7-200 (West 2010). The Board has adopted the "Authorized Agent's Manual," which it uses to provide guidance to IMRF employers such as the Village. The Authorized Agent's Manual therefore constitutes the IMRF's "administrative rules." Administrative rules interpreting a statute can be used by the court as guides, but are binding on the court only to the degree that they follow the statute. *Illinois RSA No. 3, Inc. v. Department of Central Management Services*, 348 Ill. App. 3d 72, 77 (2004).

¶ 18 Section 3.65 of the IMRF Authorized Agent's Manual states:

"Participation in IMRF is not optional for employees who meet the annual hourly standard. Exceptions to the participation requirement exist for the following positions:

1. 3.65 E. Elected Officials

2. 3.65 F. Paid Members of Elected Governing Body

### 3. 3.65 I. City Hospital Employees

For all other employees, if he or she meets the requirements, enrollment in IMRF is mandatory and cannot be excused. Part-time employees meeting these requirements must be enrolled even though they are not entitled to other fringe benefits such as vacation days, sick leave and hospitalization insurance.

Failure to require IMRF participation and to make contributions can result in substantial charges for omitted member and employer contributions in the future. Even though you fail to deduct contributions from their earnings, employees are entitled to service credits toward their pensions and may pay for the omitted service at a later date.[2] Your governmental unit will be responsible for the remainder of the pension cost."

Thus, under section 3.65 of the IMRF Authorized Agent's Manual, it is mandatory that an IMRF employer enroll its employees in the pension program.

¶ 19    In arguing that enrollment is not mandatory under section 7-137, the Village seizes upon the word "eligible" in section 7-137(a). The Village argues that "eligible" is a word that designates "the right and discretion to choose." In other terms, the Village contends that the "employee can enroll if he or she so desires; he or she is not forced to enroll by mandate." We find the Village's argument unpersuasive. First, we note that "eligible" is defined as "having the right to do or obtain something; satisfying the appropriate conditions." Oxford Online Dictionary, http://oxforddictionaries.com (last visited Apr. 17, 2013). As such, the plain language of the statute indicates that "all" municipal employees "shall" have the right to benefits from the pension fund. There is nothing in the plain language that supports the Village's argument that an employee could opt out of receiving benefits. Second, even if we were to find that the word "eligible" encompassed a certain level of discretion, we must still consider that term in the context of the whole statutory provision. See *Whelan v. County Officers' Electoral Board*, 256 Ill. App. 3d 555, 558 (1994). Considering all of the language together, it is apparent that all of the specified employees are to participate in the IMRF; the employee is not given the option of forgoing participation.

¶ 20    We also reject the Village's argument that the plaintiff's participation cannot be considered mandatory based on article XIII, section 5, of the Illinois Constitution. That section provides that membership in a local government's pension system is "an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5; see *Board of Trustees of the Police Pension Fund v. Department of Insurance*, 210 Ill. App. 3d 949, 953 (1991). The Village argues that, based on the foregoing provision, all public pensions are necessarily matters of contract. A contract requires free will to make a voluntary choice. See *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 572 (2002) (one who has been deprived of the exercise of free will cannot enter into a contract). Thus, under article XIII, section 5, of the Illinois Constitution, the Village argues that one's participation cannot be considered mandatory because, if it were, it would deny the person the opportunity of exercising his free will as to

---

[2]We note that payment for omitted service was not raised by the parties. Thus, no other mention of the statutory requirement (see 40 ILCS 5/7-139(c) (West 2010)) is made herein.

whether he wanted to participate.

¶ 21 We believe that the Village's argument is based on a flawed premise. The terms of the contractual relationship between a municipality and its employee are governed by the version of the Pension Code in effect at the time the employee became a member of the system. *Di Falco v. Board of Trustees of the Firemen's Pension Fund of the Wood Dale Fire Protection District No. One*, 122 Ill. 2d 22, 26 (1988). As set forth above, section 7-137 of the Pension Code governs the relationship between the Village and the plaintiff. That section clearly provides that it is mandatory that the plaintiff participate in the IMRF. Thus, in construing section 7-137 of the Pension Code and article XIII, section 5, of the Illinois Constitution in harmony, it is apparent that the contract referred to in the constitutional provision is the contract that the employer and employee enter into when the employer agrees to hire the employee and the employee agrees to work for the employer. Pursuant to that employment contract, section 7-137 of the Pension Code mandates, the employee will receive pension benefits as part of his compensation. In construing section 7-137 of the Pension Code and article XIII, section 5, of the Illinois Constitution together, we find nothing that violates basic contract principles.

¶ 22 The Village's second contention on appeal is that, if the plaintiff is entitled to a pension, he is entitled to no more than 50 months of service credit. In making this argument, the Village relies on section 7-139(a)(7) of the Pension Code. That section provides:

"For retroactive service: Any employee who could have but did not elect to become a participating employee, or who should have been a participant in the Municipal Public Utilities Annuity and Benefit Fund before that fund was superseded, may receive creditable service for the period of service not to exceed 50 months ***." 40 ILCS 5/7-139(a)(7) (West 2010).

¶ 23 Section 7-139(a)(7) of the Pension Code is not applicable to this case. By its plain terms, section 7-139(a)(7) of the Pension Code applies only to individuals who could have elected, or made a voluntary decision, to participate in the pension program. As explained above, the plaintiff did not have discretion to participate in the pension program. Rather, under section 7-137 of the Pension Code, his participation was mandatory. As such, section 7-139(a)(1), rather than section 7-139(a)(7), applies to this case. Section 7-139(a)(1) states in pertinent part:

"(a) Each participating employee shall be granted credits and creditable service, for purposes of determining the amount of any annuity or benefit to which he or a beneficiary is entitled, as follows:

1. For prior service: Each participating employee who is an employee of a participating municipality or participating instrumentality on the effective date shall be granted creditable service ***[.]

If the effective date of participation for the participating municipality or participating instrumentality is on or before January 1, 1998, creditable service shall be granted for the entire period of prior service with that employer without any employee contribution." 40 ILCS 5/7-139(a)(1) (West 2010).

Thus, under the plain language of section 7-139(a)(1), the plaintiff was potentially entitled

to credit for all of the work he did for the Village between 1980 and 2000.

¶ 24     The Village's third contention on appeal is that the trial court erred in granting the plaintiff's motion for summary judgment. Specifically, the Village argues that summary judgment was improper because (1) the trial court had no authority to mandate that IMRF credits be awarded to the plaintiff, because the Village's authorized IMRF agent was not a party; (2) the trial court did not consider 15 of the affirmative defenses that the Village had raised and the plaintiff had not replied to; (3) the Village raised several meritorious defenses; and (4) factual issues remained.

¶ 25     The purpose of a motion for summary judgment is to determine whether a genuine issue of triable fact exists (*People ex rel. Barsanti v. Scarpelli*, 371 Ill. App. 3d 226, 231 (2007)), and such a motion should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" (735 ILCS 5/2-1005(c) (West 2010)). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997).

¶ 26     We believe that the trial court properly entered summary judgment in the plaintiff's favor. As explained above, section 7-137 of the Pension Code provides that, after an employee is hired by a municipality, the municipality must enroll the employee in the pension program and make contributions on his behalf. The municipality should also deduct wages from the employee's salary as a contribution to that employee's pension. If the municipality fails to do so, the employee may seek a correction, to establish all of his omitted service credit. 40 ILCS 5/7-139(a)(1) (West 2010). Here, in his complaint, the plaintiff alleged that he had worked for the Village from 1980 to 2000 but that the Village had neither enrolled him in the pension program nor made the requisite contributions on his behalf. The plaintiff made an application for his omitted service credit, but the Village refused his request. As all of these allegations are supported by the record, the plaintiff was indeed entitled to summary judgment.

¶ 27     In so ruling, we find disingenuous the Village's argument that the trial court could not grant the plaintiff the relief he requested–a writ of *mandamus*–because the only person who could execute the requisite form was the authorized IMRF agent, who was not a party to the case.

¶ 28     In his first amended complaint, beyond naming the Village, the plaintiff also named the Village president, the Village trustees, the Village manager, and Eileen Donahue, in her capacity as the Village's authorized IMRF agent. The Village subsequently filed a motion to dismiss the individual defendants from the plaintiff's complaint. The Village explained:

    "If the Court grants [the plaintiff] the relief he seeks, the Village will be directed to prepare and execute IMRF Form 6.05. Ms. Donahue, as the *present* IMRF Authorized Agent, would be the specific individual to carry out this task pursuant to Section 7-135(b) of the Pension Code, at this time. However, logically speaking, an order directed towards the Village would also be sufficient to accomplish this purpose, so there is no need for Ms. Donahue to be an individual party to this litigation either. The Authorized Agent

could change during the course of this litigation, which will require [the plaintiff] to amend his complaint and cause further inefficiency, when an order directed to the Village would suffice. To the extent that [the plaintiff] sues the individual Defendants to carry out tasks that will be the Village's responsibility, the individual Defendants should be dismissed pursuant to section 2-619(a)(9)." (Emphasis in original.)

On October 25, 2010, following a hearing, the trial court granted the Village's motion to dismiss the individual defendants, including Donahue, from the plaintiff's complaint.

¶ 29   On appeal, the Village now essentially argues that the trial court erred in dismissing Donahue from the plaintiff's complaint. However, as the trial court did exactly what the Village requested, the Village cannot now complain that the trial court's actions were erroneous. See *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004) (a party cannot complain of error that the party induced the court to make, because it would be manifestly unfair to allow a party a second trial upon the basis of error that the party injected into the proceedings).

¶ 30   We also reject the Village's argument that the trial court erred in entering summary judgment before the plaintiff had responded to its 18 affirmative defenses. The Village insists that "[s]o long as the affirmative defenses remained, [the plaintiff's] right to judgment could not be absolutely clear and free from doubt." First, we believe that implicit in the trial court's ruling was that it considered all of the Village's affirmative defenses and found them to be without merit. See *In re N.B.*, 191 Ill. 2d 338, 345 (2000) (trial court is presumed to know the law and apply it properly, absent an affirmative showing in the record to the contrary). Second, in its appellant's brief, the Village refers to only four of its affirmative defenses–unclean hands, failure to fulfill a condition precedent, *laches*, and the statute of limitations. As to the other 14 affirmative defenses, it is not the role of this court to search the record and develop arguments on a party's behalf.[3] *People v. Jacobs*, 405 Ill. App. 3d 210, 218 (2010). Third, the Village cites only one case–*Green v. International Insurance Co.*, 238 Ill. App. 3d 929, 933 (1992)–in support of its argument regarding affirmative defenses. However, *Green* does not support the plaintiff's argument, as it includes no discussion of affirmative defenses that have not been responded to prior to the trial court's ruling on a motion for summary judgment. That case, therefore, does not serve as a basis to disturb the trial court's ruling. See *Willaby v. Bendersky*, 383 Ill. App. 3d 853, 861 (2008) (appellate court is not a depository in which a party may dump the burden of argument and research, and therefore arguments not supported by relevant authority are forfeited). Accordingly, the Village's arguments as to those 14 affirmative defenses are forfeited. See *id.*

¶ 31   As to the four affirmative defenses that the Village does discuss in its brief, two of them–unclean hands and failure to fulfill a condition precedent–are premised on the Village's

_____

[3]We note that the Village *lists* nine of its affirmative defenses in its reply brief. However, even if the Village had discussed these defenses in detail, its failure to discuss them earlier forfeits its right to have this court consider them. See *State Farm Mutual Automobile Insurance Co. v. Rodriguez*, 2013 IL App (1st) 121388, ¶ 29 (arguments raised for the first time in reply brief are forfeited).

argument that the plaintiff had the choice of whether to participate in the IMRF. However, as the Village was obligated to enroll the plaintiff in the IMRF, that argument is without merit. Further, the doctrine of *laches*, which provides that one may not be entitled to relief if he exhibited unreasonable delay in asserting his claim (*Monson v. County of Grundy, Illinois*, 394 Ill. App. 3d 1091, 1094 (2009)), is not applicable. Here, as the plaintiff complied with section 7-139 of the Pension Code when he made his claim for omitted service credits before he retired, the plaintiff did not exhibit an unreasonable delay in asserting his claim. *Cf. Brehm v. Sargent & Lundy*, 66 Ill. App. 3d 472, 473-74 (1978) (doctrine of *laches* barred plaintiff's claim because he did not file his claim until 13 years after he had retired).

¶ 32    Furthermore, the Village's statute-of-limitations affirmative defense is without merit. The Village argues that the trial court erred in applying the 10-year statute of limitations applicable to contracts. The Village contends that the appropriate period was at most five years. The Village further contends that the applicable limitations period began to run in 1980, when the plaintiff should have realized that the Village had not enrolled him in the IMRF. Thus, the Village insists that the plaintiff's action is time-barred.

¶ 33    Once again, the Village raises an argument that is contrary to an argument that it raised in the proceedings below. In its amended motion to dismiss, the Village asserted that "[t]he statute of limitations for an action relating to pension contributions is 10 years." The Village, thus, cannot now complain that the trial court erred in applying a 10-year statute of limitations. See *Byer Clinic & Chiropractic, Ltd. v. State Farm Fire & Casualty Co.*, 2013 IL App (1st) 113038, ¶ 20 (party is judicially estopped from assuming a position in a legal proceeding contrary to a position it held in a prior legal proceeding). Moreover, the Village's argument misstates the trial court's reasoning. The trial court stated that, under either a 5-year or a 10-year statute of limitations, the plaintiff's action was timely. Thus, the trial court did in fact consider the shorter limitations period that the Village now argues the trial court should have used.

¶ 34    Further, the Village's argument that the limitations period began to run after it failed to enroll the plaintiff in the IMRF is contrary to the plain language of the Pension Code. Section 7-139(c) of the Pension Code provides that an employee may seek a correction to establish the service credit to which he is entitled at any time while he is still a participating employee in the pension program. 40 ILCS 5/7-139(c) (West 2010). Accepting the Village's argument, that the plaintiff had only a five-year window, ending in 1985, to challenge the failure to enroll him in the IMRF, would render section 7-139(c) of the Pension Code meaningless. That, of course, we decline to do. See *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440-41 (2010) (court must interpret statutes in a way that will not render any portion of them meaningless or superfluous).

¶ 35    Here, the plaintiff sought a correction of his service credit while he was still a participating employee. After the Village refused to honor his request, he filed a complaint within one year. His action was therefore timely.

¶ 36    We also reject the Village's argument that factual issues remain that preclude summary judgment in the plaintiff's favor. The Village points out that Judge Popejoy denied the plaintiff's motion for summary judgment because he found that there were outstanding

factual issues. However, when the plaintiff later brought essentially the same motion for summary judgment, Judge Sheen granted it. The Village argues that Judge Popejoy and Judge Sheen reaching different decisions demonstrates that there are still factual issues in this case.

¶ 37    Judge Popejoy's order denying the plaintiff's motion for summary judgment was an interlocutory order. See *In re Estate of Funk*, 221 Ill. 2d 30, 85 (2006). A court has the inherent authority to reconsider and correct its rulings, and this power extends to interlocutory rulings as well as to final judgments. *People v. Mink*, 141 Ill. 2d 163, 171 (1990). Accordingly, a second trial judge has the authority to vacate the first trial judge's order. *Id.* Thus, there was nothing improper about Judge Sheen reaching a different conclusion than Judge Popejoy as to the plaintiff's motion for summary judgment. The fact that he did does not indicate that there were factual issues remaining.

¶ 38    The Village also insists that an order of *mandamus* entails numerous factual considerations, which makes it inappropriate relief to be granted on a motion for summary judgment. Relying on *Kenneally v. City of Chicago*, 220 Ill. 485, 504 (1906), the Village argues that the trial court was obligated to consider whether its order will create confusion and disorder in administration, promote substantial justice, or impose adverse consequences. Because the trial court acted in a manner "that was unmindful of these additional factual considerations," the Village argues, the trial court erred in granting the plaintiff's motion for summary judgment.

¶ 39    *Mandamus* relief is an extraordinary remedy to direct a public official or body to perform a ministerial duty that does not involve the exercise of judgment or discretion. *Read v. Sheahan*, 359 Ill. App. 3d 89, 97 (2005). A plaintiff requesting *mandamus* relief must demonstrate a clear right to the requested relief, the defendant's clear duty to act, and the defendant's clear authority to comply with the terms of the *mandamus* order. *Hadley v. Ryan*, 345 Ill. App. 3d 297, 301 (2003). Here, under the Pension Code, the plaintiff had a clear right to receive his omitted years of service credit and the Village had a clear duty to complete the necessary form so that the plaintiff could receive his full pension. The trial court therefore properly granted the plaintiff *mandamus* relief. See *Hadley*, 345 Ill. App. 3d at 301.

¶ 40    We find the Village's reliance on *Kenneally* to be misplaced. In that case, the plaintiff was a Chicago police officer. He was dropped from the city payroll on March 14, 1898. On December 19, 1904, he filed an amended petition, seeking a writ of *mandamus* that he be reinstated and that he receive all of the compensation that he should have received since March 14, 1898. The supreme court found that the plaintiff was essentially seeking compensation for work that had been done by someone other than himself for six years. *Kenneally*, 220 Ill. at 504. The supreme court found that, under these factual circumstances, the doctrine of *laches* barred the plaintiff's claim for relief. *Id.* at 508. In the instant case, as discussed above, *laches* is not applicable. Further, in light of the plaintiff's clear statutory right to his full pension, there are no outstanding factual issues that precluded the trial court from entering summary judgment in the plaintiff's favor.

¶ 41    Finally, we note that plaintiff raises two issues regarding the propriety of the trial court's order. The plaintiff argues that the trial court erred in (1) awarding him 18 years of

retroactive service credit instead of 20 years; and (2) denying his equal protection claim. Although the plaintiff did file an appeal, we subsequently dismissed that appeal due to his failure to comply with our order that he file his brief in a timely fashion. After his appeal was dismissed, the plaintiff became only the appellee to the Village's appeal. It is well settled that, in the absence of a cross-appeal, a reviewing court is confined to those issues raised by the appellant and will not consider those urged by the appellee. *Ruff v. Industrial Comm'n*, 149 Ill. App. 3d 73, 79 (1986). Accordingly, we decline to consider the issues that the plaintiff raises in his appellee's brief. See *id.*

¶ 42                                                   CONCLUSION

¶ 43          For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 44          Affirmed.