# Illinois Official Reports

## Appellate Court

*In re Marriage of Wehr*, 2021 IL App (2d) 200726

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JANET H. WEHR, Petitioner-Appellee, and PAUL A. WEHR, Respondent-Appellant. |
| District & No. | Second District No. 2-20-0726 |
| Filed | September 29, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 18-D-986; the Hon. Kenton J. Skarin, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Emily R. Carrara, of STG Divorce Law, of Naperville, for appellant. Daniel J. Kollias and Elle L. Daley, of Kollias, P.C., of Winfield, for appellee. |
| Panel | PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion. Justices Jorgensen and Brennan concurred in the judgment and opinion. |

**OPINION**

¶ 1 Respondent, Paul A. Wehr, appeals the trial court's division of his municipal pension in a Qualified Illinois Domestic Relations Order (QILDRO) issued according to a marital settlement agreement (MSA) between him and petitioner, Janet H. Wehr. At issue is whether Paul was a "participant," as defined by the MSA, in his pension plan during times that he did not work for a municipality and contribute to the plan. In calculating the marital portion of Paul's accrued benefit under the plan, the trial court determined that Paul was a "participant" in the plan even during months where he was not a municipal employee and not contributing to the plan. This was error. Accordingly, we reverse and remand with directions to enter a correct QILDRO.

¶ 2                                    I. BACKGROUND

¶ 3 Paul and Janet were married on October 13, 2000. At times before and during the marriage, Paul was a municipal employee and, as such, contributed to the Illinois Municipal Retirement Fund (IMRF). However, he was not a municipal employee contributing to the fund for the full duration of the marriage.

¶ 4 On July 26, 2019, the parties appeared for a prove-up hearing, at which the trial court entered (1) a judgment of dissolution of marriage that incorporated the MSA and (2) a QILDRO. Paul did not personally appear, but his counsel was present and advised the court that Paul had signed the settlement documents. The court entered the judgment of dissolution and the QILDRO.

¶ 5 The MSA provided in article V that, "[b]y way of a [QILDRO], described more fully in Article IX of this agreement, the Wife shall be awarded 50% of the marital portion of Husband's [IMRF]." Article IX provided:

> "The parties shall cause to be prepared and presented to the Court for entry a [QILDRO] equally dividing the marital portion, in a form acceptable to the respective plan administrators, of the Husband's [IMRF] pension. The 'QILDRO' for the Husband's [IMRF] pension shall define the amount of the Alternate Payee's benefit as follows: *'This order assigns to the Alternate Payee an amount equal to the actuarial equivalent of 50% of the marital portion of the Participant's accrued benefit under the Plan as of the Participant's Benefit Commencement Date, or the Alternate Payee's Benefit Commencement Date, if earlier. The marital portion shall be determined by multiplying the Participant's accrued benefit as of the date of entry of Judgment of Dissolution of Marriage in this case by a fraction (less than 1.0) the numerator of which is the number of months married while a plan participant (October 13, 2000[,] to the date of entry of Judgment of Dissolution of Marriage) and the denominator of which is the total number of months of service accredited to the Participant.*' " (Emphasis in original.)

¶ 6 The QILDRO bore an IMRF logo and stated that it incorporated the definitions and other provisions of section 1-119 of the Illinois Pension Code (Code) (40 ILCS 5/1-119 (West 2018)). The QILDRO followed the format specified in section 1-119(n) of the Code (*id.* § 1-119(n)). The QILDRO provided the dates of the parties' marriage for purposes of calculating "the number of months of *** service that the member accumulated in the Retirement System from the date of marriage *** to the date of divorce." *Id.* § 1-119(n)(IX)(1). The QILDRO also

specified that Janet was entitled to 50% of the marital portion of Paul's pension benefit. It did not, however, contain a calculation of Janet's benefit.

¶ 7 On August 22, 2019, an amended QILDRO was entered at Janet's request to correct the listed date of marriage.

¶ 8 On September 17, 2019, Janet served Paul with a QILDRO calculation order, along with notice that Janet would present the order in court on September 23, 2019. The QILDRO calculation bore the IMRF logo and stated that it incorporated the definitions and other provisions of section 1-119 of the Code. The order followed the format specified in section 1-119(n-5) of the Code (*id.* § 1-119(n-5)). The order used the total number of months that the parties were married (225) for "the number of months of *** service that the member accumulated in the Retirement System from the date of marriage *** to the date of divorce." *Id.* § 1-119(n)(IX)(1). The order also listed Paul's total months of service as 348, based on a figure of 29 years of service. Those figures resulted in a calculation of $821.31 per month awarded to Janet from Paul's pension benefits.

¶ 9 At the September 23, 2019, hearing, neither Paul nor his counsel was present. Janet's counsel told the court that he did not expect Paul's counsel to appear and that he was presenting the calculation order by agreement. The trial court entered the order.

¶ 10 On October 9, 2019, Paul's counsel moved to amend or vacate the calculation order for failure to conform to the MSA. On November 12, 2019, the court allowed Paul to file an amended pleading regarding allocation of the pension benefits "based upon a mutual mistake of fact." Paul thereafter filed an amended motion to amend or vacate the calculation order. Paul's counsel explained that he had believed that his presence at the September 23, 2019, hearing was unnecessary because the calculation order was simply an administrative order to effectuate a 50% distribution of the pension as specified in the MSA. The parties filed memoranda in support of their positions.

¶ 11 In his memoranda, Paul argued that the calculation order used incorrect figures. First, he had 29 years and 6 months (354 months) of total service, not just 29 years. Second, his months of service during the marriage were not equivalent to his total months of marriage. The order wrongly assumed that he was a "plan participant" (per the MSA) for the entire marriage, when in fact he was not employed by a municipality and contributing to the plan for that whole duration. Rather, he had 10 years, 8 months (128 months) of total service during the 225-month marriage. Paul's figures would result in a calculation of $459.31 per month to Janet.

¶ 12 Paul attached as an exhibit a letter from the IMRF, calculating the benefit amounts for the QILDRO. The letter listed Paul's total service as 29 years, 6 months. The dates for service were March 1982 through May 2007 for 25.25 years of service, and May 2015 through April 2019 for 4 years of service. He also had three months of permissive service. The letter stated: "No credit was earned for June 2007 through April 2015 because you were not enrolled with an IMRF employer during those months." The letter further stated that the "QILDRO time" during the marriage consisted of two periods—one of six years, eight months, and another of four years—for a total of 128 months, which was the number Paul proposed. The IMRF letter listed Paul's monthly pension annuity as $2540.58.

¶ 13 At the hearing on the matter, Janet's counsel objected to the IMRF letter as hearsay. The court overruled the objection. Paul argued that he was not a "plan participant" when he was not employed by a municipality, earning service credit, and contributing to the plan. Janet

argued that Paul was a "plan participant" even when he was not employed and contributing to the plan; thus, the calculation should use the entire length of the parties' marriage.

¶ 14    The trial court agreed with Janet, stating:

"[W]hat the Court did was to look at the common usage and the common language of what is—what does the word participant mean and when you look up participant, oddly enough, it says one who participates and takes you to participates.

Looking at the definition of that, one of the definitions is to have a part or share in something. When you take that definition, even though [Paul] was not accruing additional benefits, he was still a part of the system. He didn't cash out. He didn't retire and take a pay out. He was still a participant. Until he actually retires, he is a participant in the program. *** I don't think as [Janet's counsel] points out that the Pension Code is violated. Perhaps it is. But the Court doesn't see that because as [Janet's counsel] points out, you can't give more than the credits that were accrued. But I don't think— I think that's the total credits here. And so for the reasons that I'm stating in that the Court feels that [Paul] was a participant even during those years where he was not accruing additional service hours, the MSA is very clear, and that the QILDRO that was prepared and the QILDRO calculation that was entered are in conformance with the judgment."

¶ 15    Paul moved to reconsider. A new judge heard the motion and stated that because there had already been a thorough vetting of the issues, he was going to let the decision stand. Paul appeals.

¶ 16                                    II. ANALYSIS

¶ 17    Paul contends that the QILDRO calculation order is erroneous because the trial court construed "plan participant" in a manner contrary to both the MSA and the Code.

¶ 18    Janet initially argues that Paul forfeited review of the calculation order by failing to object before the order was entered. We disagree. Although Paul indeed did not object before entry of the calculation order, the trial court later gave Paul leave to challenge the order based on mutual mistake. The trial court then fully heard and considered the matter. We decline to hold that Paul forfeited a challenge that the trial court itself chose to entertain.

¶ 19    Janet also argues that Paul's challenge to the calculation order is an attempt to modify the MSA, and she cites case law holding that agreed orders may be modified or vacated only upon a showing that meets the standards applied to petitions under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)). See *In re Marriage of Rolseth*, 389 Ill. App. 3d 969, 972 (2009). But Paul does not argue that the MSA requires modification. Rather, he and Janet offer opposing interpretations of the MSA as it applies to the QILDRO calculation.

¶ 20    As to the merits, the issue turns primarily on the meaning of the MSA's language, "the number of months married while a plan participant." If Paul was a "plan participant" only when he was employed by a municipality, earning service credits, and contributing to the pension plan, then the calculation order was erroneous because it included months during the marriage when Paul was not employed by a municipality.

¶ 21    "Illinois law is clear that rules of contract construction are applicable to the interpretation of provisions in a marital settlement agreement, and the primary objective is to effectuate the intent of the parties." *In re Marriage of Hall*, 404 Ill. App. 3d 160, 166 (2010). "When the

terms of the agreement are unambiguous, the intent of the parties is determined solely from the language of the agreement." *Id.* "Whether the agreement reflected the actual intent of the parties is a question of law we review *de novo*." *Id.*

¶ 22 The MSA provides in article V that "[b]y way of a [QILDRO], described more fully in Article IX of this agreement, [Janet] shall be awarded 50% of the marital portion of [Paul's IMRF]." Article IX directs that the QILDRO "assign[ ] to [Janet] an amount equal to the actuarial equivalent of 50% of the marital portion of [Paul's] accrued benefit under the Plan." (Emphasis omitted.) It is clear from these provisions that the parties intended for Janet to receive 50% of the marital portion of Paul's accrued benefit under the plan. As we explain, the calculation order contravened that intent. In deeming Paul a "plan participant" even for months in which he did not earn service credit or contribute to the plan, the calculation resulted in Janet receiving more than 50% of the amount Paul accrued during the marriage.

¶ 23 We note that the formula used in the MSA was essentially the "*Hunt* formula." Under that formula, the amount of the pension interest included as marital property is the present value of the interest multiplied by a fraction whose numerator is the number of years (or months) of marriage "*during which benefits were being accumulated*," and whose denominator is the total number of years (or months) during which benefits were accumulated before the dissolution. (Emphasis added.) *In re Marriage of Hunt*, 78 Ill. App. 3d 653, 663 (1979). The *Hunt* formula is codified in the model QILDRO form supplied in section 1-119(n) of the Code (40 ILCS 5/1-119(n) (West 2018)). *In re Marriage of Culp*, 399 Ill. App. 3d 542, 553 (2010). The model directs that the calculation be made using "the number of months of *** service that the member accumulated in the Retirement System from the date of marriage *** to the date of divorce." 40 ILCS 5/1-119(n)(IX)(1) (West 2018). The QILDRO entered here not only specifically incorporated section 1-119 but reproduced the foregoing language verbatim. The phrase "months of *** service" refers to months that Paul earned service credit and contributed to the fund.

¶ 24 Janet argues, however, that the MSA contemplates a different formula than what is specified in section 1-119(n) of the Code and the QILDRO. She notes that the MSA refers to "*the number of months married while a plan participant (October 13, 2000[,] to the date of entry of the Judgment of Dissolution of Marriage)*." (Emphasis in original.) According to her, the parenthetical language shows that the calculation must be based on the entire period of the marriage. She also contends that Paul was still a "plan participant" when not accruing benefits. We disagree.

¶ 25 First, the parenthetical insertion of the dates of the marriage does not unambiguously show an intent to depart from the calculation specified in section 1-119(n) of the Code and the QILDRO. The dates can just as easily be viewed as a simple reference for ascertaining which months of service occurred during the marriage and which did not. Moreover, if the calculation uses months during which Paul was not earning service credit and making contributions, Janet's share would exceed 50% of the benefits Paul actually accrued during the marriage. But article V of the MSA states that Janet is to receive "50% of the marital portion" of the fund, and article IX more specifically states that Janet is to receive "*50% of the marital portion of [Paul's] accrued benefit under the Plan.*" (Emphasis in original.) Janet claims that the term "plan participant" itself reveals an intent to *also* include months during which Paul was not accruing benefits, but Janet is mistaken.

¶ 26    The trial court relied on the dictionary definition of "participant." A "participant" is defined as "one that participates." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/participant (last visited Sept. 2, 2021) [https://perma.cc/DQH5-2VCD]. "[P]articipate" is defined as "to take part" or "to have a part or share in something." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/participate (last visited Sept. 2, 2021) [https://perma.cc/W82U-ZWPG]. These definitions do not provide clear guidance as to whether a person vested in a municipal pension is "participating" when he is not employed by the municipality and contributing to the plan, yet has not retired and cashed out. While Paul had vested "shares" in the plan, he also did not accumulate new "shares" when he was not contributing.

¶ 27    We find definitive guidance in the Code's usage. See *State v. American Federation of State, County & Municipal Employees, Council 31*, 2016 IL 118422, ¶ 53 (statutes in existence when a contract is executed are considered part of the contract, and it is presumed that parties enter into a contract with knowledge of the existing law); *In re Marriage of Farrell*, 2017 IL App (1st) 170611, ¶ 22 (interpreting a marital settlement agreement in light of the Code). The Code defines "[p]articipating employee" as "[a]ny person included within this fund, and eligible to benefits therefrom, as provided in Section 7-137." 40 ILCS 5/7-110 (West 2018). Section 7-137(a) specifies dates for when persons shall "be subject to this Article and eligible to benefits from [the] fund." *Id.* § 7-137(a). Those dates are, except for specifically excluded employees, (1) "all persons who are employees of any municipality *** on the effective date of participation of the municipality *** beginning upon such effective date," and (2) "all persons, who became employees of any participating municipality *** after the effective date of participation of such municipality *** beginning upon the date such person becomes an employee." *Id.* § 7-137(a)(1), (a)(2). An " '[e]mployee' " is a person who "[r]eceives earnings as payment for the performance of personal services or official duties out of the general fund of a municipality." *Id.* § 7-109(1)(a)(1).

¶ 28    During employment, both the "participating employee" and the municipality must make contributions to the IMRF. *Id.* §§ 7-172, 7-173. But once employment terminates, the participant ceases making contributions and receives either a pension or a refund of contributions. *Id.* §§ 7-141(a), 7-166, 7-168. The Code contemplates periods of " '[c]urrent [s]ervice' " while a person is employed by a municipality (*id.* § 7-112) and " '[p]rior [s]ervice" for employees who were previously contributing to the plan (*id.* § 7-111). It also contemplates " '[c]reditable [s]ervice' " for "[a]ll periods of prior service or current service for which credits are granted." *Id.* § 7-113. The pension annuity is based on the amount of that creditable service. *Id.* A person receiving a pension is defined as an "[a]nnuitant" rather than as an employee or participant. *Id.* § 7-117. See *Village of Oak Brook v. Sheahan*, 2015 IL App (2d) 140810, ¶ 36.

¶ 29    Here, Paul was not a "participating employee" when he was not employed by a municipality and not contributing to the plan. Nor was he a municipal "employee" at all during those times. When not employed by the municipality, he was not "participating" in "current service." He ceased making contributions and earning service credit. He did not receive a refund of contributions but instead was eligible for a pension annuity, as an "annuitant" instead of as a "participant." Yet, his eligibility for a pension annuity did not equate to his "taking part in" the plan or "having a share in the plan" when he was not earning service credit or making contributions. Those "shares," or "service credits," were already vested from prior service. He was not adding to them or otherwise causing his interest in the plan to grow when he was not

- 6 -

employed by a municipality. Considered a different way, Paul also was not "accumulating benefits" during those months under the *Hunt* formula and the Code.

¶ 30    We find further guidance in the Illinois Municipal Retirement Fund Manual for Authorized Agents for the Regular and SLEP Plans (IMRF Manual). Illinois Municipal Retirement Fund Manual for Authorized Agents 2021 for the Regular and SLEP Plans, https://www.imrf.org/ AAmanual/Online_AA_Manual/aamanual.htm (last visited Sept. 2, 2021) [https://perma.cc/ VUJ4-4VEE]. "Although the IMRF is not an administrative agency and does not have formal regulations promulgated under the Illinois Administrative Code, its board of trustees (Board) has authority to make 'administrative decisions on participation and coverage, which are necessary for carrying out the intent of this fund ***.' " *Stevens v. Village of Oak Brook*, 2013 IL App (2d) 120456, ¶ 17 (quoting 40 ILCS 5/7-200 (West 2010)). The IMRF Manual constitutes the IMRF's " 'administrative rules.' " *Id.* "Administrative rules interpreting a statute can be used by the court as guides but are binding on the court only to the degree that they follow the statute." *Id.* A court may properly take judicial notice of administrative rules and regulations. *Acme Brick & Supply Co. v. Department of Revenue*, 133 Ill. App. 3d 757, 762 (1985).

¶ 31    In *Sheahan*, we addressed the ability of Sheahan, a retired police chief, to transfer service credits to the IMRF from two other pension funds. To transfer credits, Sheahan was required to be an "active member" of the IMRF. See 40 ILCS 5/7-139(a)(9) (West 2012); *Sheahan*, 2015 IL App (2d) 140810, ¶ 32. We held that he was not an "active member." In doing so, we consulted the IMRF Manual. *Sheahan*, 2015 IL App (2d) 140810, ¶ 37. Section 1.90 of the manual defined " 'participating member,' " also known as an " '[a]ctive member,' " as follows: " '[A] member currently working in an IMRF qualified position and making contributions to IMRF.' " *Id.*; see Illinois Municipal Retirement Fund Manual for Authorized Agents 2021 for the Regular and SLEP Plans, Section 1, General Information, https://www.imrf.org/AA manual/Online_AA_Manual/Exhibits/Section_1.pdf (last visited Sept. 23, 2021) [https:// perma.cc/Y4FU-4R4E]. We thus concluded that the legislature intended that an "active member" be a person employed by a participating municipality and making contributions to the fund. *Sheahan*, 2015 IL App (2d) 140810, ¶ 36. We further note that the IMRF Manual has procedures for termination of participation when an employee terminates municipal employment. Thus, it contemplates that a person is no longer a participant when municipal employment ends.

¶ 32    Thus, Paul was not a "participating member" under the IMRF Manual, or a "participating employee" under the Code, during the time that he was not employed by a municipality and not contributing to the plan. He was *also* not, we conclude, a "plan participant" under the MSA during that time. Thus, the trial court erred in using the entire duration of the marriage as the time in which Paul was a "plan participant." Our reading of the MSA fulfills the parties' stated intent that Janet receives 50% of the marital portion of Paul's accrued benefit under the plan. By calculating the QILDRO using months that Paul was not contributing to the plan, the court gave Janet more than 50% of the benefit accrued during the marriage.

¶ 33    Our conclusion that Paul was a "plan participant" only when he was employed and making contributions to the plan is also consistent with the IMRF's calculations that it sent to Paul reporting "QILDRO time" as a total of 10 years, 8 months. Janet argues that the letter from IMRF was not offered into evidence. We disagree. The record shows that she objected to the letter's admission, but the trial court overruled the objection and considered it.

¶ 34 We also note that the trial court used an improper figure for the total amount of Paul's service. The court factored in 29 years, although Paul's service was 29 years, 6 months. Accordingly, the QILDRO calculation did not conform to the MSA and the court erred in denying Paul's motion to amend it. The correct calculation is as Paul states: 128 months of plan participation (10 years, 8 months) divided by 354 months (29 years, 6 months) x $2540.58 x 50%. Based on these calculations, Janet is entitled to receive $459.31 per month.

¶ 35                                             III. CONCLUSION

¶ 36 For the reasons stated, we reverse the judgment of the circuit court of Du Page County and remanded with directions to enter a corrected QILDRO calculation consistent with this opinion.

¶ 37 Reversed and remanded with directions.