GEORGE J.W. SMITH, Plaintiff-Appellant, v. THE POLICEMEN'S
ANNUITY AND BENEFIT FUND *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—07—2421

Opinion filed May 26, 2009.

Collins & Bargione, of Chicago (George B. Collins and James J. Lessmeis-
ter, of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellee Judicial Retirement System.

Retirement Board of Policemen's Annuity & Benefit Fund, of Chicago (David R. Kugler, of counsel), for appellee Retirement Board of Policemen's Annuity and Benefit Fund.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Plaintiff George J.W. Smith appeals from the circuit court of Cook County's August 9, 2007, order granting the defendant Judicial Retirement System of Illinois's (JRS) motion for summary judgment, which denied *mandamus* relief to the plaintiff regarding the transfer of pension funds and service credits from the Chicago Policemen's Annuity and Benefit Fund (the Police Fund) to JRS. On appeal, the plaintiff argues that retired judges have the statutory right to transfer pension funds and service credits to JRS. For the following reasons, we affirm.

## BACKGROUND

The facts of this case are undisputed. Beginning in 1968, the plaintiff served as a police officer with the City of Chicago. In February 1981, the plaintiff resigned as a police officer to begin practicing law. On April 23, 1981, the Police Fund issued the plaintiff a refund in the amount of $18,089.81, which constituted salary contributions the plaintiff made to the police pension fund during his tenure as a police officer.

In March 1995, the plaintiff became a judge in the circuit court of Cook County, where he served until his resignation in 2002. During his service as a judge, the plaintiff contributed to the judicial pension fund established by JRS. However, the plaintiff stopped making contributions to the judicial pension fund after his retirement from the bench.

In November 2005, the plaintiff, who was then 60 years old, made an oral inquiry to the Retirement Board of the Policemen's Annuity and Benefit Fund (the Retirement Board)[1] regarding whether he could repay the $18,089.81 refund of his police pension to the Police Fund, for the purpose of transferring those funds and the corresponding service credits toward his judicial pension. On November 28, 2005, in a letter signed by the Retirement Board's executive director John J. Gallagher, Jr. (Gallagher), the Retirement Board instructed the plaintiff to repay a total of $37,412.44 in order to cover the refunded

---

[1]The Retirement Board is the board of trustees of the Chicago Policemen's Annuity and Benefit Fund. 40 ILCS 5/5—108 (West 2006).

$18,089.81, plus 3% per annum accumulated interest. The letter further stated that the "amounts accumulated to your credit, including interest, *** as of December 16, 2005 and the municipality credits computed and credited under Article 5 [of the Illinois Pension Code], including interest, *** as of February 20, 1981 shall be transferred to [JRS] on December 16, 2005." Subsequently, the plaintiff tendered $37,412.44 to the Retirement Board, which attempted to transfer the funds to JRS. JRS rejected the attempted transfer of the funds.

In a January 2006 letter to the Police Fund, JRS's deputy director Timothy Blair (Blair) explained the basis for JRS's rejection of these funds:

> "[The plaintiff] is an inactive member of [JRS]. Per 40 ILCS 5/5—232 of the Illinois Compiled Statutes, only active members of the [JRS] may transfer service credit from the [Police Fund] to [JRS]. Therefore, [JRS] cannot accept the transferred contributions or service credit of [the plaintiff]."

On February 6, 2006, the Retirement Board returned $37,412.44 to the plaintiff, stating in a letter signed by Gallagher that this return of funds was an administrative decision subject to judicial review (the February 6, 2006, order).

On February 28, 2006, the plaintiff filed a complaint for administrative review in the circuit court of Cook County against the Police Fund, the Retirement Board, and various Police Fund individuals,[2] pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2006)), alleging that he was denied due process of law because there was no hearing, no statement of charges, and no opportunity to appear and defend before the Retirement Board made its decision on February 6, 2006. Further, the complaint alleged that the Retirement Board's decision was arbitrary and capricious, that it denied the plaintiff equal protection of the law, and that section 5—232 of Article 5 of the Illinois Pension Code (40 ILCS 5/5—232 (West 2006)) specifically provided for the "restatement of pension rights upon repayment of refunds." The complaint also requested that the trial court reverse the Retirement Board's February 6, 2006, order, and that the defendants be ordered to accept the repayment of the refund, and to transmit the refund, along with the city's portion of the contributions, to JRS.

---

[2]It is unclear in the record who most of the named individuals were and what roles they might have served in the attempted transfer of funds and service credits to JRS. The named individuals include: John J. Gallagher, Jr., Stephen C. Hughes, Dana R. Levenson, Robert F. Reusche, Judith C. Rice, Michael Lazzaro, James P. Maloney, Steven M. Robbins, and Kenneth A. Hauer.

On April 4, 2006, the Retirement Board answered the complaint by submitting the administrative record relevant to the plaintiff's repayment request, which included all correspondence from JRS and the Police Fund regarding the attempted transfer of funds and service credits.

On August 10, 2006, the Retirement Board filed a motion to dismiss the plaintiff's complaint, arguing that it did not arbitrarily refuse the plaintiff's repayment of the refund, that it had tendered the funds to JRS, which rejected the funds, and that it had no authority to compel JRS to accept the funds. The Retirement Board also asserted that any order entered by the trial court requiring JRS to act "would be futile because [JRS] is not a party to this action."

Subsequently, on October 10, 2006, the plaintiff filed an amended complaint adding JRS as a defendant. The amended complaint included the same allegations (count I) as the original complaint, but also sought *mandamus* relief (count II) against JRS to accept the funds. In count II, the plaintiff alleged that he was an "active member" of JRS because he had not "taken or claimed" a refund of his salary contributions to JRS. He also contended that the acceptance of payment by JRS from the Police Fund was a "ministerial act" that required no discretion and that he was entitled to combine his pension payments and service credits earned during his tenure as a police officer with those he earned as a judge.

On March 22, 2007, JRS filed a motion for summary judgment regarding count II's *mandamus* relief against JRS, arguing that the plaintiff had no clear right to *mandamus* relief because he was not an "active member" of JRS at the time the request to transfer funds was made. Further, JRS argued that the plaintiff's reliance on the Retirement Systems Reciprocal Act (40 ILCS 5/20—101 *et seq.* (West 2006)) (Reciprocal Act) was misplaced because it was inapplicable to this case.

On June 29, 2007, a hearing on JRS's motion for summary judgment was held during which the Retirement Board stated that it attempted to transfer the funds to JRS only because it believed the plaintiff was an active member of JRS at the time of the transfer and that it promptly returned the plaintiff's funds once JRS rejected them. By contrast, the plaintiff argued that he was an active member of JRS and that JRS had no authority to review the Retirement Board's decision to forward the funds to JRS and, thus, JRS must accept them.

On August 9, 2007, the trial court entered an order granting JRS's motion for summary judgment as to count II of the plaintiff's amended complaint. The trial court held that the definition of "employee" within the Reciprocal Act was inapplicable to the instant case and that

it must look to Article 18 of the Illinois Pension Code (40 ILCS 5/18—101 *et seq.* (West 2006)), which governs judicial pensions, to determine who constituted an "active member" under section 5—232 of Article 5 (40 ILCS 5/5—232 (West 2006)). Specifically, the trial court held:

> "While Article 18 does not specifically define 'active' as opposed to 'inactive' members, the court may refer to other portions of Article 18 for guidance. Section 18—128, in defining the conditions for payment for survivor's annuities, contains the following language: '[a] survivor's annuity shall be payable...upon the death of an *inactive participant who has terminated service as a judge...*' 40 ILCS 5/18—128 (emphasis supplied). Thus, using the reverse definition to define an 'active participant,' an active participant is one who has not terminated service as a judge.
>
> Reading the language of the Article 18 together, it is clear that the legislature intended that an 'active member' of [JRS] to be one who is a sitting judge. Therefore, where [section 5—232] of Article 5 refers to an 'active member' of [JRS], the legislature intended for sitting judges to be able to apply for transfer of his credits. Had [the] plaintiff applied for transfer of his credits prior to leaving the bench, it would have been granted. JRS had the authority to reject the payment from the [Retirement Board] as it was not authorized to accept it pursuant to the Illinois Pension Code. It does not matter that the [Retirement Board] mistakenly submitted the payment to JRS. The [Retirement Board's] mistake does not bind another agency to an unauthorized payment."

On August 15, 2007, the plaintiff filed a notice of appeal with this court.

## ANALYSIS

We must first address the threshold issue of jurisdiction before proceeding to determine the substance of this case. Under Supreme Court Rule 301 (155 Ill. 2d R. 301), "[e]very final judgment of a circuit court in a civil case is appealable as of right." An order is final and appealable when it " 'terminate[s] the litigation between the parties on the merits of the cause' " and disposes of all pending issues and parties. *Cribbin v. City of Chicago*, 384 Ill. App. 3d 878, 885, 893 N.E.2d 1016, 1024 (2008), quoting *People ex rel. Madison Chemical Corp. v. Gurrie*, 52 Ill. App. 2d 360, 363, 202 N.E.2d 123, 125 (1964). However, "[w]hen the relief sought under different counts [of the plaintiff's complaint] is identical, and disposition of the one necessarily entails disposal of the other, then the grant of relief under one count will be deemed, for purpose of appeal, to constitute a resolution of the other count as well." *Cribbin*, 384 Ill. App. 3d at 885, 893 N.E.2d at 1025, citing *Grissom v. Buckley-Loda Community Unit School District No. 8,*

11 Ill. App. 3d 55, 296 N.E.2d 624 (1973) (the trial court order was final and appealable when counts I and II of the plaintiff's complaint both requested that a writ of *mandamus* be issued and the trial court granted relief under count I).

■ In this case, the trial court granted JRS's motion for summary judgment, which only pertained to count II of the plaintiff's amended complaint—the request for *mandamus* relief. However, the plaintiff's requests for relief under both counts I and II were "predicated upon the same theory"—that he was an "active member" of JRS and, thus, statutorily entitled to transfer his pension funds and service credits from the Police Fund to JRS. See *Cribbin*, 384 Ill. App. 3d at 885, 893 N.E.2d at 1025. Count I of the plaintiff's amended complaint requested the trial court to order the Retirement Board, along with the various Retirement Board individuals, to accept the repayment of the refund and to transmit those funds to JRS. Count II requested that the trial court compel JRS to accept the funds being transferred by the Retirement Board. Thus, we find that the trial court's August 9, 2007, order granting summary judgment as to count II of the plaintiff's amended complaint, by holding that the plaintiff was not an "active member" within the meaning of the Illinois Pension Code and that JRS was not statutorily authorized to accept the funds the Retirement Board attempted to transfer, necessarily entailed disposal of count I. Once the trial court determined that JRS had no statutory authority to accept the funds being transferred by the Retirement Board, there was, naturally, no more for the Retirement Board to do except to return the funds to the plaintiff. Therefore, the trial court's August 9, 2007, order was final and appealable because it effectively terminated the litigation between both parties on the merits of the cause and disposed of all pending issues and parties.

We now turn to the substantive portion of the case. Resolution of this case depends upon the interpretations of Articles 5, 18 and 20 of the Illinois Pension Code. 40 ILCS 5/5—232, 18—101 *et seq.*, 20—101 *et seq.* (West 2006). The issue before us is whether the trial court erred in holding that the plaintiff was not an "active member" of JRS as to entitle a transfer of his pension funds and service credits from the Police Fund to JRS.

Generally, "[i]n an appeal from a decision of the trial court on a complaint for administrative review, we review the decision issued by the Board rather than that of the trial court." *Katalinic v. Board of Trustees of the Municipal Employees', Officers' & Officials' Annuity & Benefit Fund*, 386 Ill. App. 3d 922, 925, 898 N.E.2d 243, 246 (2008). However, count II of the plaintiff's amended complaint, for which JRS filed a motion for summary judgment, only sought *mandamus* relief

against JRS, rather than an administrative review of its refusal to accept the funds and service credits; thus, we need only review the trial court's decision to grant JRS's motion for summary judgment.

We review *de novo* the trial court's grant of summary judgment in favor of JRS. *Collins v. St. Paul Mercury Insurance Co.*, 381 Ill. App. 3d 41, 45, 886 N.E.2d 1035, 1039 (2008). Summary judgment is appropriate when pleadings, affidavits, depositions and admissions of record, when viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Katalinic*, 386 Ill. App. 3d at 926, 898 N.E.2d at 246; *Collins*, 381 Ill. App. 3d at 45, 886 N.E.2d at 1039. We also address *de novo* the statutory construction of various provisions within the Illinois Pension Code (40 ILCS 5/5—232, 18—101 *et seq.*, 20—101 *et seq.* (West 2006)). *Katalinic*, 386 Ill. App. 3d at 926, 898 N.E.2d at 246 ("[i]nterpretation of a statute is a question of law requiring *de novo* review"); *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 210, 889 N.E.2d 1167, 1168 (2008) ("[a]n appeal involving undisputed facts and the interpretation of statutory provisions presents a question of law we address *de novo*").

The plaintiff here requested that the trial court grant *mandamus* relief against JRS by ordering it to accept the transfer of funds and service credits from the Police Fund. *Mandamus* relief is an "extraordinary remedy to direct a public official or body to perform a ministerial duty that does not involve the exercise of judgment or discretion." *Read v. Sheahan*, 359 Ill. App. 3d 89, 97, 833 N.E.2d 887, 894 (2005); *Hadley v. Ryan*, 345 Ill. App. 3d 297, 301, 803 N.E.2d 48, 52 (2003). A petitioner requesting *mandamus* relief must demonstrate a "clear right to the requested relief, the respondent's clear duty to act, and the respondent's clear authority to comply" with the terms of the *mandamus* order. *Read*, 359 Ill. App. 3d at 98, 833 N.E.2d at 894-95; *Hadley*, 345 Ill. App. 3d at 301, 803 N.E.2d at 52.

The plaintiff argues that he is entitled to *mandamus* relief because the Retirement Board correctly interpreted its own statute under Article 5, which governs the Police Fund, when it determined that the plaintiff was eligible to repay his police pension refund and have those funds transferred to his judicial pension. He argues that JRS, in rejecting the funds, had no discretion to interpret Article 5 and that it should have only performed the ministerial act of accepting the funds being transferred by the Retirement Board. The plaintiff also argues that the Reciprocal Act is applicable in this case because it was made a part of Article 18, which governs judicial pensions, and that it clearly allows a retired judge to transfer his funds from the Police Fund to JRS.

JRS, on the other hand, argues that *mandamus* relief is unavailable because the plaintiff was not an active member of JRS and, thus, had no clear right to the relief requested. JRS further argues that in reading Article 18 as a whole, it is apparent that the legislature intended that an "active member" of JRS be a "sitting judge who is currently paying contributions towards his judicial pension." Further, JRS contends that the Reciprocal Act is inapplicable in this case because the Police Fund is not a "participating system" under the Reciprocal Act.

The Retirement Board argues that it was, at best, merely a "stakeholder" which accepted and tendered the funds to JRS, but that it had no statutory duty to order JRS to accept those funds.

In statutory construction, a court should "ascertain and give effect to the legislature's intent." *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 394, 789 N.E.2d 1211, 1212 (2003). The legislature's intent may be discerned by the plain and ordinary meaning of the statutory language, and "[w]here the language is clear and unambiguous, [a court] must apply the statute without resort to further aids of statutory construction." *Krohe*, 204 Ill. 2d at 395, 789 N.E.2d at 1212. "Legislative intent must be ascertained from a consideration of the entire act, its nature, its object, and the consequences resulting from different constructions." *Shields v. Judges' Retirement System*, 204 Ill. 2d 488, 494, 791 N.E.2d 516, 519 (2003). Further, a statute "[must] be construed as a whole and, if possible, in a manner such that no term is rendered meaningless or superfluous." *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524, 778 N.E.2d 683, 392 (2002). Pension statutes must also be liberally construed in favor of the petitioner's rights. *Shields*, 204 Ill. 2d at 494, 791 N.E.2d at 519.

The plain language of the Reciprocal Act, under Article 20 of the Illinois Pension Code, states that "[t]his Article shall only apply to those retirement systems which have accepted it, as specified in the respective divisions or Articles of this [pension code] governing such systems." 40 ILCS 5/20—129 (West 2006). The Reciprocal Act further provides that any person with pension credits in two or more "participating systems"[3] may be entitled to combine those pension credits. See 40 ILCS 5/20—115, 20—117 (West 2006). Article 18, which governs judicial pensions, has adopted the Reciprocal Act; by contrast, however, Article 5, which governs police pensions, has not accepted it.

---

[3]"Participating systems" is defined under section 20—108 of Article 20 as "[a]ny retirement system to which 'The 1955 Act' or this Article applies." 40 ILCS 5/20—108 (West 2006).

See 40 ILCS 5/18—157 (West 2006).[4] Because the Police Fund has not adopted the Reciprocal Act, it is not a "participating system" under Article 20 so as to make the Reciprocal Act applicable in this case. We reject the plaintiff's argument that the Reciprocal Act is applicable in this case because it only mattered that Article 18 has adopted it. We must take into consideration the entirety of the Illinois Pension Code when determining legislative intent and will only do so by construing statutes as a whole. *Shields*, 204 Ill. 2d at 494, 791 N.E.2d at 519. Therefore, the Reciprocal Act does not apply here and the plaintiff may only transfer and combine his pension funds and service credits to the extent allowed by Articles 5 and 18.

Section 5—232 of Article 5 under the Illinois Pension Code applies to the Police Fund and allows "active members" of JRS to transfer their "credits and creditable service" from the Police Fund to JRS. That section states:

> "(a) Any *active member* of [JRS] may apply for transfer of his credits and creditable service accumulated under [the Police Fund] to [JRS]. Such credits and creditable service shall be transferred forthwith. Payment by [the Police Fund] to [JRS] shall be made at the same time and shall consist of:
>
> (1) the amounts accumulated to the credit of the applicant, including interest, on the books of the [Police Fund] on the date of transfer, but excluding any additional or optional credits, which credits shall be refunded to the applicant; and
>
> (2) municipality credits computed and credited under this Article, including interest, on the books of the [Police Fund] on the date the member terminated service under the [Police Fund].
>
> Participation in [the Police Fund] as to any credits transferred under this [s]ection shall terminate on the date of transfer.
>
> (b) An *active member* of [JRS] may reinstate service and service credits terminated upon receipt of a separation benefit, by payment to the [Police Fund] of the amount of the separation benefit plus interest thereon to the date of payment." (Emphasis added.) 40 ILCS 5/5—232 (West 2006).

Neither Article 5 nor Article 18 specifically defines the term "active member." However, we turn to certain provisions within these articles to determine who the legislature intended to define as "active members."

---

[4]Section 18—157 of Article 18 states: "The 'Retirement Systems Reciprocal Act', being Article 20 of this [Pension Code], is adopted and made a part of this Article; provided that [s]ection 20—131 [regarding financing and employer contributions] shall not apply to this system." 40 ILCS 5/18—157 (West 2006).

Section 18—120 of Article 18 states that an individual becomes a participant[5] in JRS on the day that individual becomes an eligible judge, "unless the judge files with the [Retirement Board] a written notice of election not to participate within 30 days of the date of being notified of the option." 40 ILCS 5/18—120 (West 2006). Further, section 18—112(f) refers to participating judges as those who have "membership in this system," and thus, we can conclude that the terms "participant" and "member" may be used interchangeably. 40 ILCS 5/18—112(f) (West 2006).

Article 18 also distinguishes between an "active" and "inactive" participant or member. For example, section 18—128.01 provides for the amount of annuity available to a surviving spouse upon the death of an "active participant," versus a "participant who had terminated service with at least 10 years of service." 40 ILCS 5/18—128.01 (West 2006). Section 18—122 denotes the difference between "active contributors" to JRS and those who are "no longer *** active contributor[s]." 40 ILCS 5/18—122 (West 2006). Section 18—123 alludes to both a "participant in active service as a judge" and one who is "a participant *** who is not contributing" to JRS. 40 ILCS 5/18—123 (West 2006). Moreover, in defining the conditions for refunds of contributions, section 18—129 states that "[u]pon receipt of a refund, the [former judge who has applied for a refund of his contributions] shall cease to be a participant and shall thereupon relinquish all rights in [JRS]." 40 ILCS 5/18—129(a) (West 2006). Reading the language of these provisions as a whole, "participants" refers to sitting judges who either may or may not be making salary contributions to JRS, or former judges who have not claimed a refund of their salary contributions from JRS. However, we find that the legislature intended *active* participants or members of JRS to be sitting judges who currently pay salary contributions toward their judicial pensions; whereas *inactive* members could mean either sitting judges who do not contribute to JRS, or former judges who do not currently make salary contributions and have not sought a refund of his salary contributions from JRS.

Here, the plaintiff was neither a sitting judge nor contributing to JRS at the time he sought to transfer the funds and service credits from the Police Fund to JRS in 2005. The plaintiff had stopped making salary contributions to his judicial pension in 2002, when he retired from the bench. We reject the plaintiff's claim that he was an "active member" of JRS solely because he had not yet "taken or claimed" a refund of his salary contributions to JRS. Acceptance of this argument

---

[5]A participant is "[a]ny judge participating in [JRS] as specified in [s]ections 18—120 and 18—121." 40 ILCS 5/18—110 (West 2006).

would lead to the absurd result that judges, sitting or retired, who no longer contribute to their judicial pensions would still be considered active members, thus rendering the term "inactive participant" under Article 18 superfluous and meaningless. See *Stroger*, 201 Ill. 2d at 524, 778 N.E.2d at 392 (a statute must be construed in a manner such that "no term is rendered meaningless or superfluous"); *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510, 877 N.E.2d 1101, 1115 (2007) ("a court must presume that the legislature, in enacting the statute, did not intend absurdity or injustice"). At best, the plaintiff was an inactive member at the time JRS rejected the attempt to transfer his funds and service credits. Therefore, the plaintiff was not entitled to a transfer of his funds and service credits under section 5—232 of Article 5 because he was not an active member of JRS at the time JRS rejected his transfer attempt.

Further, if the legislature intended to allow both active and inactive members of JRS to transfer their funds and service credits from the Police Fund to JRS, it could have so indicated. For example, section 5—235 of Article 5 specifically states that "any *active* or *inactive* member of the Illinois Municipal Retirement Fund who has been a county sheriff may apply for transfer of his creditable service *** to the Illinois Municipal Retirement Fund" (emphasis added) (40 ILCS 5/5—235(a) (West 2006)), whereas section 5—232, the provision at issue here, only stated that "*active* members" of JRS may apply for a transfer of funds and service credits (emphasis added) (40 ILCS 5/5—232 (West 2006)). Thus, in the instant case, by omitting any reference to "inactive" members or participants in the plain language of section 5—232, the legislature clearly intended only for active members—sitting judges who currently contribute to JRS—to be eligible to transfer their funds and service credits from the Police Fund to JRS.

The plaintiff also argues that the Retirement Board correctly interpreted its own statute under Article 5 when the November 28, 2005, letter from Gallagher, the Retirement Board's executive director, instructed the plaintiff to repay $37,412.44 in order for those funds to be transferred to JRS. He further argues that JRS, in rejecting the funds, had no discretion to interpret section 5—232 of Article 5 and that it should have only performed the ministerial act of accepting the funds being transferred by the Retirement Board. We find no indication in the record that the November 28, 2008, letter, sent by Gallagher in response to the plaintiff's oral inquiry regarding the repayment of refunded contributions, constituted an "interpretation" of the Retirement Board's statute under Article 5. Rather, the Retirement Board did not make a final decision until its February 6, 2006, order, stating that "the [t]rustees moved to refund your payment of refunded

annuity accumulations. \*\*\* [Y]ou may, if you wish, pursue [a]dministrative [r]eview in the [c]ircuit [c]ourt of Cook County of the decision of the [Retirement] Board." Further evidence of this occurred during the June 29, 2007, hearing on JRS's summary judgment motion, when defense counsel for the Retirement Board explained that it incorrectly believed that the plaintiff was an active member of JRS at the time that it tendered his funds to JRS, but that once it learned the plaintiff was no longer an active member of JRS, it immediately returned the plaintiff's payment.

We also reject the plaintiff's contention that JRS should have only performed the ministerial act of accepting the funds being transferred by the Retirement Board and that it overstepped its authority in interpreting section 5—232 of Article 5. See *Shields*, 204 Ill. 2d at 492, 791 N.E.2d at 518 ("[a]s a general rule, courts will accord deference to the interpretation of a statute by the agency charged with its administration"). This argument is meritless because, as discussed above, JRS did not have any statutory authority to accept the funds being transferred from the Police Fund under either Article 5 or Article 18, because only sitting judges currently making contributions to JRS were eligible for such transfers. We thus agree with the trial court's August 9, 2007, order, holding:

> "Had [the] plaintiff applied for transfer of his credits prior to leaving the bench, it would have been granted. JRS had the authority to reject the payment from the Police Fund as it was not authorized to accept it pursuant to the Illinois Pension Code. It does not matter that the [Retirement Board] mistakenly submitted the payment to JRS. The [Retirement Board's] mistake does not bind another agency to an unauthorized payment."

■ Because the plaintiff was not a sitting judge who was making salary contributions to JRS at the time he sought transfer of his pension funds and service credits from the Police Fund to JRS, he was not entitled to a transfer of those funds and service credits under Articles 5 and 18. See 40 ILCS 5—232, 18—101 *et seq.* (West 2006). Thus, the plaintiff was not entitled to *mandamus* relief because he had not demonstrated a "clear right to the requested relief, the [defendant's] clear duty to act, and the [defendant's] clear authority to comply" with the terms of the *mandamus* order. *Read*, 359 Ill. App. 3d at 98, 833 N.E.2d at 894-95; see *Hadley*, 345 Ill. App. 3d at 301, 803 N.E.2d at 52. Therefore, we find that no genuine issue of material fact existed and summary judgment was properly granted in favor of JRS.

Affirmed.

SOUTH and GALLAGHER, JJ., concur.