2015 IL App (2d) 140810
No. 2-14-0810
Opinion filed June 26, 2015

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF OAK BROOK, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13-MR-942 |
| | ) | |
| THOMAS SHEAHAN, | ) | |
| | ) | |
|     Defendant-Appellant | ) | |
| | ) | |
| (Beth Janicki Clark, Louis W. Kosiba, Kathleen | ) | |
| O'Brien, Linda Horrell, Thomas Riatt, and | ) | |
| Sharon Brown, in their Official Capacities as | ) | |
| Staff Members of the Illinois Municipal | ) | |
| Retirement Fund Benefit Review Committee; | ) | |
| Gwen Henry, Natalie Cooper, Thomas Kuehne, | ) | |
| John Piechocinski, William Stafford, and | ) | |
| Jeffrey Stulir, in their Official Capacities as | ) | |
| Members of the Illinois Municipal Retirement | ) | |
| Fund Benefit Review Committee and as | ) | |
| Trustees of the Illinois Municipal Retirement | ) | |
| Fund; and Sharon Thompson and Mark | ) | |
| Nannini, in their Official Capacities as Trustees | ) | |
| of the Illinois Municipal Retirement Fund; The | ) | |
| Illinois Municipal Retirement Fund; and The | ) | Honorable |
| Municipal Employees' Annuity and Benefit | ) | Terence M. Sheen, |
| Fund of Chicago, Defendants). | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices McLaren and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Thomas Sheahan, was the chief of police for the Village of Oak Brook (Oak Brook) from March 21, 2005, to April 29, 2011.  During his tenure, pursuant to section 3-109.1 of the Illinois Pension Code (40 ILCS 5/3-109.1 (West 2012)), he elected to participate in the Illinois Municipal Retirement Fund (IMRF).  After Sheahan retired from Oak Brook and began receiving his pension, IMRF notified Oak Brook that Oak Brook had an unfunded pension liability of $746,434.35, resulting from Sheahan's retirement.  Oak Brook filed an administrative appeal with IMRF, which upheld the amount of the unfunded liability.  Oak Brook then filed an administrative review action in the circuit court of Du Page County.  The circuit court reversed IMRF's decision, ruling that Sheahan had improperly transferred service credit to IMRF from two other pension funds.  Sheahan appeals.  As explained below, we affirm the circuit court and reverse IMRF's decision.

¶ 2                                    I. BACKGROUND

¶ 3    Prior to becoming Oak Brook's police chief, Sheahan worked for the Village of Deerfield (Deerfield) from 1975 to 1988.  During that time, he accrued 152 months of service credit in Deerfield's Police Pension Fund (Deerfield Fund), established under article 3 of the Pension Code (40 ILCS 5/3-101 *et seq.* (West 2012)).  When he left his employment there, he received a refund of his contributions to the Deerfield Fund, thereby forfeiting his service credit.

¶ 4    Subsequently, Sheahan worked for the City of Chicago from 1998 to 2004.  During that time, he accrued 77 months of service credit in the Municipal Employees' Annuity Benefit Fund of Chicago (MEABF), established under article 8 of the Pension Code (40 ILCS 5/8-101 *et seq.* (West 2012)).  Sheahan's contributions remained in MEABF when he left his employment with the City of Chicago.

¶ 5     In March 2005, Sheahan became Oak Brook's police chief.  Pursuant to section 3-109.1 of the Pension Code, he elected to participate in IMRF rather than in Oak Brook's article 3 pension fund.  He thus became a "Sheriff's law enforcement employee" or "SLEP," which section 7-109.3(a)(2) of the Pension Code defines as an individual who has elected to participate in IMRF pursuant to section 3-109.1.  40 ILCS 5/7-109.3(a)(2) (West 2012).

¶ 6     At the time, Sheahan completed IMRF Form 6.22, entitled "Election of Police Chief to Participate as a SLEP Member."  In the space on the form for listing the police pension fund service that he wished to transfer to IMRF, Sheahan listed his Deerfield Fund service and his MEABF service.  He checked a box to indicate that he had forfeited the Deerfield Fund service by receiving a refund of his contributions.  Although IMRF sent Sheahan correspondence acknowledging his desire to transfer his prior service, no transfers occurred at the time.

¶ 7     Meanwhile, on August 28, 2007, the Governor signed into law Public Act 95-504 (eff. Aug. 28, 2007).  Among other things, the public act created section 8-226.7 of the Pension Code (40 ILCS 5/8-226.7 (West 2008)) and amended section 7-139(a)(9) of the Pension Code (40 ILCS 5/7-139(a)(9) (West 2008)).  Together, sections 8-226.7 and 7-139(a)(9) provided a six-month window during which any IMRF SLEP member could transfer service credit from an article 8 pension fund to IMRF.  If a SLEP member applied for a transfer, the article 8 pension fund was required to transfer to IMRF the funds it had on its books for the applicant.  40 ILCS 5/8-226.7 (West 2008).  The applicant, in turn, was required to pay the amount, plus interest, by which the contributions that would have been required if he or she had participated in IMRF as a SLEP member during the period in question exceeded the amount transferred to IRMF by the article 8 fund.  40 ILCS 5/7-139(a)(9) (West 2008).

¶ 8   On November 16, 2007, during the six-month window, Sheahan applied to transfer his 77 months of MEABF service credit to IMRF. IMRF informed Sheahan in a letter that the total amount that it required to transfer the service was $103,996.41. Of that amount, MEABF was required to contribute $80,759.18, and Sheahan was responsible for the remaining $23,237.23. IMRF explained that "[a]ll monies must be transferred by May 28, 2008 in order to receive IMRF SLEP service credit as stated above." Shortly thereafter, MEABF transferred $80,759.18 to IMRF; however, Sheahan did not contribute the remaining funds.

¶ 9   On April 11, 2011, IMRF again wrote to Sheahan regarding the transfer of his MEABF service. It informed him that he had "already established 60 months (or 5 years) of the service," based on the payment from MEABF. It stated that 17 months of service remained to be purchased at a cost of $30,662.73, including interest. Again, Sheahan never made the payment.

¶ 10   In April 2011, as Sheahan was preparing to retire as Oak Brook's police chief, he contacted Deerfield to inquire about buying back the 152 months of service credit that he had forfeited upon leaving his employment there. On April 14, 2011, Deerfield notified him that the cost to buy back the credit was $101,895.60. On April 29, 2011, before repurchasing the Deerfield credit, Sheahan retired from his position as Oak Brook's police chief.

¶ 11   On May 3, 2011, Sheahan delivered a certified check to Deerfield to repurchase his service credit. Deerfield then gave him a check to deliver to IRMF, which he did the same day. On May 5, 2011, IMRF deposited the check and credited Sheahan with 152 months of service.

¶ 12   Sheahan then began receiving monthly pension payments of approximately $6,396. Because he had 24 years of service credit in IMRF, including his transfers from the Deerfield Fund and MEABF, his pension equaled 2.5% of his final salary for each year of service, or a total of 60% of his final salary. 40 ILCS 5/7-142.1(a) (West 2012).

¶ 13    In November 2011, IMRF notified Oak Brook that it had an unfunded pension liability of $746,434.35 resulting from Sheahan's retirement, based on actuarial calculations.  It required Oak Brook to begin making annual payments in excess of $52,000 to fund the pension.

¶ 14    Oak Brook requested a hearing before the IMRF Board of Trustees' Benefit Review Committee (Committee) to challenge the amount of the unfunded pension liability on the ground that Sheahan had improperly transferred his service credit from the Deerfield Fund and MEABF.  Oak Brook and Sheahan submitted written and oral arguments, documentary evidence, and deposition testimony.  Per IMRF rules, no live testimony was taken.

¶ 15    The evidence included portions of IMRF's "Manual for Authorized Agents."  Section 6.40A of the manual, entitled "General Requirements for Past Service Applications," provided: "Payment for service credits must be received while the member is in an active IMRF status.  However, one final payment may be made after termination."  The manual defined "Active member" as a "participating member."  It defined "Participating member," in turn, as "[a] member currently working in an IMRF qualified position and making contributions to IMRF."

¶ 16    Also included in the evidence was Sheahan's IMRF Form e6.41, entitled "Termination of IMRF Participation."  The form was electronically signed by Eileen Donahue, Oak Brook's IMRF authorized agent, and was time-stamped May 5, 2011, at 12:46 p.m.  The form indicated that Sheahan's "IMRF Termination Date" was April 29, 2011.  An IMRF "Certificate of Benefits" indicated that the effective date of Sheahan's pension was May 1, 2011.

¶ 17    Bridgette Gordon, who was the supervisor of IMRF's past services unit when Sheahan retired from Oak Brook, testified at her deposition consistently with the provisions of the Manual for Authorized Agents.  She testified that a member was no longer "active" upon the termination of his or her employment.  However, she further testified that, as long as an IMRF member

applied to transfer past service credit prior to retiring, the member could make one payment following his or her retirement to purchase the past service credit. A number of other IMRF employees gave deposition testimony that was consistent with Gordon's testimony.

¶ 18    Tecya Anderson testified at her deposition that she was an IMRF field representative. According to Anderson, Sheahan showed as "active" in IMRF's computer system until May 5, 2011, at 12:46 p.m., when Donahue electronically submitted Sheahan's termination form. However, Anderson testified, the form stated that Sheahan's termination date was April 29, 2011. She further testified that an IMRF pension begins on the first of the month following a member's termination. According to Anderson, because Sheahan's pension became effective on May 1, 2011, his termination date had to have been in April 2011.

¶ 19    Miriam Gutierrez testified at her deposition that she was an IMRF member service representative and that she met with Sheahan on April 29, 2011. According to notes she documented in the IMRF computer system at the time, Sheahan delivered an application for his pension, a beneficiary form, a tax form, and other miscellaneous documents. Gutierrez did not recall her conversation with Sheahan, but she agreed that she would have told him that he could have made one payment for his past service credit following his termination date.

¶ 20    Sheahan submitted an affidavit, in which he stated the following. On April 29, 2011, he met with Gutierrez at IMRF. When he asked her about "buying back" time from Deerfield, she told him that he had 90 days to do so. If Gutierrez had told him that a different time period was mandatory, he would have followed her instructions. There was nothing to gain "by not waiting a few more days to resign after doing the exact same acts of transfer."

¶ 21    Sheahan further stated in his affidavit that, when he transferred his MEABF service credit, IMRF informed him that the MEABF funds were sufficient to purchase only 60 months of

service credit in IMRF. IMRF also told him that he had the option to purchase the remaining 17 months of service credit. He chose not to do so. Had IMRF told him that transferring all of the service credit was mandatory, he "would have done whatever was necessary to have all the months transferred." According to Sheahan, he followed IMRF's instructions during every step of the process of transferring his service credit.

¶ 22 After reviewing the evidence, the Committee issued a decision recommending to the full Board of Trustees that it affirm Sheahan's transfers. Regarding the Deerfield Fund transfer, the Committee found that until May 5, 2011, IMRF was unaware of Sheahan's resignation and that, regardless, IMRF rules allowed one payment after the date of termination. It further found that Sheahan had applied for the transfer while he was still participating in IMRF, "when he signed the Election to Participate in 2005." Regarding the MEABF transfer, the Committee reasoned that nothing in section 8-226.7 or 7-139(a)(9) required that all 77 months of MEABF service credit be transferred, such that the transfer of 60 months to IMRF was proper.

¶ 23 On April 26, 2013, the Board adopted the Committee's findings and conclusions, thereby upholding Sheahan's transfers.

¶ 24 Oak Brook timely filed a two-count complaint in the circuit court. Count I sought administrative review of the Board's decision. Count II sought declaratory judgment and alleged that Public Act No. 95-504 was unconstitutional special legislation.

¶ 25 On June 17, 2014, the trial court entered judgment in Oak Brook's favor on count I, determining that IMRF wrongly approved the transfers. The court ruled that the Deerfield Fund transfer violated section 7-139(a)(9) of the Pension Code, because Sheahan was not an "active member" of IMRF at the time of the transfer. The court ruled that the MEABF transfer violated

sections 8-226.7 and 7-139(a)(9) of the Pension Code, because those sections did not permit partial transfers from an article 8 fund to IMRF.

¶ 26     On July 28, 2014, the trial court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason to delay appeal of the June 17, 2014, order.  Sheahan timely appealed.

¶ 27                                    II. ANALYSIS

¶ 28     On appeal, Sheahan argues that IMRF's decision upholding his transfers of service credit from the Deerfield Fund and MEABF was not clearly erroneous.  He contends that the "clearly erroneous" standard of review applies, because a "determination of prior service credits" presents a mixed question of law and fact.  Oak Brook responds that the issue of the validity of the transfers presents questions of law, reviewed *de novo*.  According to Oak Brook, the issue requires this court to interpret various provisions of the Pension Code and determine whether IMRF has the authority to adopt a rule permitting members to pay for service credit transfers after their termination dates.

¶ 29     In administrative review cases, the appellate court reviews the decision of the agency, not the trial court.  *Lindemulder v. Board of Trustees of the Naperville Firefighters' Pension Fund*, 408 Ill. App. 3d 494, 500 (2011).  A court may reverse an administrative decision where the agency's conclusion on a question of law was erroneous, its factual findings were against the manifest weight of the evidence, or its resolution of a mixed question of law and fact was clearly erroneous.  *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005).  "Mixed questions of fact and law are 'questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another

way, whether the rule of law as applied to the established facts is or is not violated.' " *American Federation*, 216 Ill. 2d at 577 (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)).

¶ 30    The issues in this case do not involve the application of an undisputed rule of law to established facts. We are not required to determine how many service credits Sheahan accrued, which would involve a mixed question of law and fact, as Sheahan contends. Rather, the parties dispute the interpretation of various provisions of the Pension Code, as well as IMRF's authority to adopt a rule permitting members to pay for service credit transfers after their termination dates. We agree with Oak Brook that these issues present questions of law, reviewed *de novo*. See *Wood Dale Fire Protection District v. Illinois Labor Relations Board, State Panel*, 395 Ill. App. 3d 523, 528 (2009) (the issue of whether an agency rule conflicts with its enabling statute presents a question of law reviewed *de novo*); *Village of Roselle v. Roselle Police Pension Board*, 382 Ill. App. 3d 1077, 1080 (2008) (an agency's determination of an issue of statutory interpretation is reviewed *de novo*).

¶ 31                      A. The Deerfield Fund Transfer

¶ 32    Sheahan transferred his service credit from the Deerfield Fund to IMRF pursuant to sections 3-110.3 and 7-139(a)(9) of the Pension Code (40 ILCS 5/3-110.3, 7-139(a)(9) (West 2012)). Read together, these sections permit the transfer of service credit from an article 3 police pension fund to IMRF. Section 3-110.3 provides the amounts that the transferring fund is required to pay to IMRF. 40 ILCS 5/3-110.3 (West 2012). Section 7-139(a)(9) provides the amount that the member must pay to IMRF, which is the amount, plus interest, by which the contributions that would have been required if he or she had participated in IMRF as a SLEP member during the period in question exceed the amount transferred to IRMF by the article 3

fund. 40 ILCS 5/7-139(a)(9) (West 2012). Section 7-139(a)(9) states that, upon transfer of credits pursuant to section 3-110.3 and upon payment by the member of the required amount, past service credits "shall be granted *** to any active member of [IMRF], and to any inactive member who has been a county sheriff." 40 ILCS 517-139(a)(9) (West 2012). At issue is the term "active member."

¶ 33    A court's primary objective in interpreting a statute is to ascertain and give effect to the legislature's intent. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006). The statute's plain language is the most reliable indicator of legislative intent, and a court must afford the language its plain and ordinary meaning. *Southern Illinoisan*, 218 Ill. 2d at 415. A court must not construe words and phrases in isolation, but must read them in light of the statute's other relevant provisions. *Southern Illinoisan*, 218 Ill. 2d at 415. Furthermore, a reviewing court will give deference to the interpretation of a statute by the agency charged with its administration; however, the agency's interpretation will be rejected if erroneous. *Maggio v. Pollution Control Board*, 2014 IL App (2d) 130260, ¶ 14. To the extent that there is any question as to legislative intent or the clarity of a pension statute's language, it must be liberally construed in favor of the pensioner. *Kanerva v. Weems*, 2014 IL 115811, ¶ 36.

¶ 34    Article 7 of the Pension Code, which governs IMRF, does not define the term "active member." However, in determining its meaning, a number of other provisions are relevant. The term "member" appears in several places in article 7 and is used interchangeably with the term "employee." For example, the "Purpose" section provides that IMRF's mission is to "provide a sound and efficient system for the payment of annuities and other benefits *** to certain officers and employees, and to their beneficiaries," as well as to "provide income protection to members and their beneficiaries." 40 ILCS 5/7-102 (West 2012). Similarly, section 7-139(a)(5.1), which

governs the granting of service credit for time spent in the armed forces, provides that a participating employee must make "employee contributions that would have been required had the service been rendered as a member," plus interest "from the date of first membership in the Fund to the date of payment." 40 ILCS 5/7-139(a)(5.1) (West 2012).

¶ 35    Other provisions shed light on what it means to be an "active" employee or member. The statute defines a SLEP, in pertinent part, as "[a] person who has elected to participate in [IMRF] under Section 3-109.1 of this Code, and who is employed by a participating municipality to perform police duties." 40 ILCS 5/7-109.3(a)(2) (West 2012). The statute's definition of "employee" likewise provides:

> "any chief of police who elects to participate in this Fund under Section 3-109.1 of this Code, regardless of whether such person continues to be employed as chief of police or is employed in some other rank or capacity within the police department, shall be an employee under this Article for so long as such person is employed to perform police duties by a participating municipality and has not lawfully rescinded that election." 40 ILCS 5/7-109 (West 2012).

During a SLEP member's employment, both the member and the participating municipality must make contributions to IMRF. For earnings after June 1, 2006, a SLEP member must contribute a minimum of 7.5% of his or her earnings. 40 ILCS 5/7-173, 7-173.1 (West 2012). The participating municipality must make employer contributions based upon a separate rate determined in accordance with section 7-172(c) of the Pension Code. 40 ILCS 5/7-172(c) (West 2012).

¶ 36    Based on these provisions, we conclude that the legislature intended the term "active member" to refer to a person who is employed by a participating municipality and making

contributions to IMRF. A police chief who has elected to participate in IMRF qualifies as an "employee" or a "SLEP" only as long as he or she continues to be employed by a participating municipality to perform police duties. Likewise, it is only during his or her employment that an employee or member makes contributions to IMRF. Once employment terminates, the participant ceases making contributions and receives either a pension, if eligible, or a refund of contributions. 40 ILCS 5/7-141(a), 7-166, 7-168 (West 2012). A person receiving a pension is defined as an "[a]nnuitant," rather than as an employee or member. 40 ILCS 5/7-117 (West 2012). Thus, a person can be considered an "active member" of IMRF only when he or she is employed by a participating municipality and making contributions to the fund.

¶ 37 The Board, in drafting the Manual for Authorized Agents, has defined the term "active member" in this manner. The Manual for Authorized Agents is the Board's "administrative rules" (*Stevens v. Village of Oak Brook*, 2013 IL App (2d) 120456, ¶ 17), which the Board is authorized to establish (40 ILCS 5/7-198 (West 2012)). Section 1.90 defines "[a]ctive member" as a "participating member," which, in turn, is defined as "[a] member currently working in an IMRF qualified position and making contributions to IMRF." Because our interpretation of the term "active member" is consistent with the Board's definition, there is no reason to depart from its definition. See *Maggio*, 2014 IL App (2d) 130260, ¶ 14 (a reviewing court will give deference to the interpretation of a statute by the agency charged with its administration as long as the agency's interpretation is not erroneous).

¶ 38 We find support for our conclusion in *Smith v. Policemen's Annuity & Benefit Fund*, 391 Ill. App. 3d 542 (2009). In that case, the court ruled that the Pension Code did not permit a retired judge to transfer service credit from the Chicago Policemen's Annuity and Benefit Fund to the Judicial Retirement System of Illinois (JRS). *Smith*, 391 Ill. App. 3d at 552. The court

explained that section 5-232 of the Pension Code permitted " 'active members' of JRS" to transfer service credit from a police pension fund to JRS. (Emphasis omitted.) *Smith*, 391 Ill. App. 3d at 552 (quoting 40 ILCS 5/5-232 (West 2006)). Although the relevant provisions of the Pension Code did not define "active member," the court interpreted the term to mean "sitting judges who currently pay salary contributions toward their judicial pensions." *Smith*, 391 Ill. App. 3d at 551. Because the judge in question had retired and was not making contributions to JRS, he was not an "active member" eligible to transfer prior service credit. *Smith*, 391 Ill. App. 3d at 552.

¶ 39    Sheahan argues that *Smith* is distinguishable because the judge in that case retired three years prior to applying to transfer his police pension service credits. Sheahan contends that, because he had retired only days earlier and because he still was listed as "active" in IMRF's computer system, his transfer was proper. We reject this argument.

¶ 40    The basis for Sheahan's argument is that IMRF did not receive his "Termination of IMRF Participation" form until May 5, 2011. In arguing that he remained in "active" status until that date, he relies on section 7-135(d) of the Pension Code, which states that "[t]he delivery of any communication or document by an employee or a participating municipality or participating instrumentality to its authorized agent shall not constitute delivery to the fund." 40 ILCS 5/7-135(d) (West 2012). Thus, according to Sheahan, he was an "active member" until Donohue electronically submitted his termination form to IMRF on May 5, 2011, at 12:46 p.m.

¶ 41    Section 7-135(d) simply provides that delivery of a document to an authorized agent does not constitute delivery to IMRF. It says nothing about the effective date of any actions reflected in those documents. Regardless of when IMRF received the form, it listed Sheahan's "IMRF Termination Date" as April 29, 2011. Moreover, IMRF determined the effective date of

Sheahan's pension to be May 1, 2011, which, according to Anderson, meant that Sheahan's termination date occurred during April 2011. Indeed, section 5.20E of the Manual for Authorized Agents states that "IMRF pensions are effective as of the first day of the month after participation terminates (after the last date of participation as indicated on the termination form)." Thus, Sheahan was no longer an "active member" as of April 29, 2011, which was his last date of participation as indicated on his termination form.

¶ 42    The next issue is whether IMRF exceeded its authority when it adopted a rule permitting members to pay for service credit after their termination dates. Section 6.40A of the Manual for Authorized Agents provides that applications for service credit and payments for service credit must be received while the member is in "an active IMRF status." However, it goes on to state that "one final payment may be made after termination." Similarly, section 6.40C(3) of the manual states that, "[a]lthough an IMRF member must make application for past service credits before he or she terminates participating employment with an IMRF or reciprocal systems employer, one payment for past service can be accepted after the termination date."

¶ 43    An administrative agency's authority derives from its enabling statute, and the agency has no inherent or common-law authority. *Wood Dale Fire Protection District*, 395 Ill. App. 3d at 527. Consequently, if an agency's rules go beyond the scope of the legislative grant of authority or conflict with the enabling statute, the rules are invalid. *Wood Dale Fire Protection District*, 395 Ill. App. 3d at 527-28. However, like statutes, administrative rules are presumed to be valid, and the challenging party has the burden of establishing their invalidity. *Julie Q. v. Department of Children & Family Services*, 2011 IL App (2d) 100643, ¶ 36. If it can reasonably do so, a court has a duty to affirm a rule's validity. *Julie Q.*, 2011 IL App (2d) 100643, ¶ 36.

¶ 44    Oak Brook argues that IMRF's rule permitting one payment following termination is invalid as applied to this case, because section 7-139(a)(9) permits IMRF to grant service credit only to an active member, unless the member has been a county sheriff.  We agree.  As pertinent here, section 7-139(a)(9) provides that service credit "shall be granted *** to any active member of [IMRF], and to any inactive member who has been a county sheriff, upon transfer of such credits pursuant to Section 3-110.3 *** and payment by the member" of the amount by which the cost of the IMRF credits exceeds the amount transferred by the article 3 fund.  40 ILCS 5/7-139(a)(9) (West 2012).  For Sheahan's Deerfield Fund transfer, no member payment was required.  Thus, the only event that had to take place before IMRF granted service credit to Sheahan was transfer of the credits pursuant to section 3-110.3.  However, the transfer pursuant to section 3-110.3 did not occur until sometime between May 2 and May 5, 2011, when IMRF received and deposited the check from Deerfield.  By then, Sheahan was no longer an active member of IMRF (in fact, even when Sheahan paid to buy back the credits from Deerfield, he already was not an active member).  To the extent that section 6.40A or 6.40C(3) of the Manual for Authorized Agents permitted IMRF to grant Sheahan credit after he was no longer an active member, the rules are invalid because they conflict with the statute.  If we were to uphold the validity of section 6.40A or 6.40C(3) as applied to this case, we would effectively abolish section 7-139(a)(9)'s requirement that a member either be active or have been a county sheriff to receive credit.  This we cannot do.

¶ 45    In arguing that IMRF's rule permitting one payment after termination is valid, Sheahan relies on section 7-139(c) of the Pension Code.  That section provides, in pertinent part, that "[a] participating employee or other applicant shall not be entitled to credits or creditable service unless the required employee contributions are made in a lump sum or in installments made in

accordance with board rule." 40 ILCS 5/7-139(c) (West 2012). However, nothing in section 7-139(c) authorizes IMRF to grant service credit to inactive members who have not been county sheriffs. Rather, it simply requires that payment be received before credit is granted. Logically, then, payment must be received when a member is still active, so that IMRF does not violate 7-139(a)(9) when it grants credit to the member. In other words, section 7-139(c) does not alter section 7-139(a)(9)'s limitation that credit be granted only to active members or to inactive members who have been county sheriffs.

¶ 46                                    B. The MEABF Transfer

¶ 47     Sheahan transferred his MEABF service credit to IMRF pursuant to sections 8-226.7 and 7-139(a)(9) of the Pension Code. For a six-month period, those sections permitted any IMRF SLEP member to transfer service credit from an article 8 pension fund to IMRF. Section 8-226.7 provided that the service credit shall be transferred upon application, and shall include payment by the article 8 fund to IMRF of the amounts accumulated on the books of the fund to the credit of the applicant, including interest. 40 ILCS 5/8-226.7 (West 2008). As pertinent to the MEABF transfer, section 7-139(a)(9) provided that service credit shall be granted to any active member of IMRF "upon transfer of such credits pursuant to Section *** 8-226.7 *** and payment by the member" of the amount, plus interest, by which the contributions that would have been required if he or she had participated in IMRF as a SLEP member during the period in question exceed the amount transferred to IRMF by the article 8 fund. 40 ILCS 5/7-139(a)(9) (West 2008).

¶ 48     Sheahan argues that, although he accumulated 77 months of service credit in MEABF, IMRF properly granted him 60 months of credit based upon the $80,759.18 that MEABF paid. He argues that nothing in the statute prohibited IMRF from awarding him service credit based on

the payment received from MEABF, even though he never paid the employee contribution required to purchase the remaining 17 months. Oak Brook responds that nothing in the statute authorized IMRF to grant a reduced number of service credits.

¶ 49 Section 7-139(a)(9) states that service credit shall be granted upon the happening of two events: (1) the transfer of such credits pursuant to section 8-226.7 "and" (2) payment by the member of the amount by which the cost of the IMRF credits exceeds the amount transferred by the article 8 fund. Generally, the word "and" between two statutory elements "indicates that both of the elements must be satisfied in order to comply with the statute." *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 606 (2008). However, if reading "and" in its literal sense would create an inconsistency in the statute or conflict with legislative intent, then courts will depart from the word's literal meaning. *County of Du Page*, 231 Ill. 2d at 606 (citing *John P. Moriarty, Inc. v. Murphy*, 387 Ill. 119, 129-30 (1944)). Here, reading "and" in its literal sense would not create an inconsistency or conflict with the legislature's intent.

¶ 50 Notably, another subsection of section 7-139(a) expressly authorizes IMRF to grant reduced service credit upon receipt of a transfer from an article 3 pension fund. Specifically, section 7-139(a)(10) applies when service credit is transferred to IMRF pursuant to section 3-110.8 of the Pension Code. It provides that, if the contributions that would have been required by IMRF to establish the service credit exceed the amount that the article 3 fund pays to IMRF, then the amount of service credit granted to the member "shall be reduced by a corresponding amount." 40 ILCS 5/7-139(a)(10) (West 2012). No member contribution is required to effectuate the transfer, and following the transfer the member is permitted to "buy back" the reduction in service credit. 40 ILCS 5/7-139(a)(10) (West 2012). The service credit later

purchased by the member is "allowed *** notwithstanding the provisions of Article 3 terminating all transferred credits on the date of transfer." 40 ILCS 5/7-139(a)(10) (West 2012).

¶ 51    Clearly, the legislature knew how to authorize IMRF to grant reduced service credit when the funds received from an outside pension fund are less than that required to purchase the full amount of service credit in IMRF. The legislature could have included similar language in section 7-139(a)(9), but it did not. See *Cullen v. Retirement Board of the Policeman's Annuity & Benefit Fund*, 271 Ill. App. 3d 1105, 1109 (1995) ("[I]f the legislature had wanted the first paragraph of section 5-227 to read in the way the Board wishes us to interpret it, it could have used the same language or similar language to that which it used in the second paragraph."). Therefore, we conclude that, to effectuate a transfer of service credit under sections 8-226.7 and 7-139(a)(9), the legislature intended to require both the transfer of service credit pursuant to section 8-226.7 *and* payment by the member of the amount by which the cost of the IMRF credits exceeds the amount transferred by the article 8 fund.

¶ 52    Sheahan contends that MEABF transferred all of the funds on its books to IMRF and that IMRF gave him the option of paying for the remaining 17 months of service from MEABF, which option he declined to exercise. While these contentions might be true, they do not change our interpretation of section 7-139(a)(9). We recognize that section 7-139(c) permits IMRF to adopt rules for receiving required member contributions either in a lump sum or in installments. 40 ILCS 5/7-139(c) (West 2012). However, nothing in section 7-139(c) provides that IMRF may award reduced credit to members who do not pay their required member contributions in full prior to their termination dates. In other words, IMRF might have been authorized to give Sheahan the option of paying his required member portion in installments over time, but it was

not authorized to grant him reduced credit when section 7-139(a)(9) required both the transfer of service credit pursuant to section 8-226.7 and payment of the member contribution.

¶ 53 Sheahan also argues that invalidating the transfer would violate the principle that pension statutes should be liberally construed in favor of pensioners. However, the principle applies only when there is a question as to legislative intent or the clarity of a pension statute's language (*Kanerva*, 2014 IL 115811, ¶ 36), which is not the case here.

¶ 54 We also dismiss Sheahan's concern about his MEABF credits having "fully vanished." The trial court ordered that Sheahan's MEABF credits be reinstated with that fund, and we see nothing improper with that procedure. Sheahan's transfer of the credits to IMRF was not valid, so the proper course of action is for IMRF to return the funds to MEABF and for MEABF to reinstate the credits. The same is true for the invalid Deerfield transfer.

¶ 55                                    C. Equitable Estoppel

¶ 56 Sheahan briefly argues that Oak Brook should be equitably estopped from challenging the amount of his pension. He contends that Oak Brook knew of his election to participate in IMRF as a SLEP member when it hired him, and that Oak Brook made the required SLEP contributions during his employment. Likewise, Oak Brook "induced" him to share the cost by making member contributions. Thus, according to Sheahan, Oak Brook is estopped.

¶ 57 This appeal is from the trial court's judgment on count I of Oak Brook's complaint, which sought administrative review of IMRF's decision. In an administrative review action, the court is limited to the record developed at the administrative level and may not conduct a hearing on new issues. *Acevedo v. Department of Employment Security*, 324 Ill. App. 3d 768, 773 (2001). Sheahan did not raise the issue of equitable estoppel before the Board, and he cannot raise it for the first time on appeal. *SMRJ, Inc. v. Russell*, 378 Ill. App. 3d 563, 576 (2007).

¶ 58                                    III. CONCLUSION

¶ 59     For the reasons stated, we affirm the judgment of the circuit court of Du Page County and

reverse the decision of the IMRF Board of Trustees.

¶ 60     Circuit court judgment affirmed.