TOWN OF COTTON HILL ROAD DISTRICT, Petitioner-Appellee, v. GEORGE L. HOCKENYOS, Respondent-Appellant (Leo D. Leigh *et al.*, Defendants).—TOWN OF COTTON HILL ROAD DISTRICT, Petitioner and Cross-Respondent-Appellee, v. SPRINGFIELD MARINE BANK, Trustee, *et al.*, Respondents and Cross-Petitioners-Appellants.

Fourth District   Nos. 4—84—0178, 4—84—0350 cons.

Opinion filed January 24, 1985.

380

Giffin, Winning, Lindner, Newkirk, Cohan & Bodewes, P.C., of Springfield (James M. Winning and R. Mark Mifflin, of counsel), for appellant George L. Hockenyos.

Harold M. Olsen and Nils A. Olsen, both of Olsen & Olsen, of Springfield, for other appellants.

Robert E. Stine, of Stine & Wolter, P.C., of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

These consolidated appeals arise from condemnation proceedings initiated on December 1, 1982, when petitioner, town of Cotton Hill Road District, filed a separate petition in the circuit court of Sangamon County seeking to obtain right-of-way to widen and change the approaches to a bridge which was part of a township road. In cause No. 4—84—0350 the Springfield Marine Bank, as trustee, Paul Joseph Mrasak, Catherine Mrasak, Charles Cousins, and unknown owners were made parties respondent. In cause No. 4—84—0178 the respondents were George L. Hockenyos, Leo D. Leigh, Phyllis Crews, and Leland Leigh. In each case the respondents filed traverses. The cases were consolidated for hearing on the traverses. The court denied the traverses. Separate trials to determine damages and compensation were held. Final judgments were entered in the cases on December 29, 1983, and February 2, 1984, respectively.

Respondents have appealed. Respondents in cause No. 4—84—0350 contend that error occurred at the trial in their case. We will discuss this subsequently. The major thrust of respondents' contentions in that case and the only contention of respondents in the other case concerns the propriety of the ruling upon the traverses in which the respondents contended that the petitioner lacked authority to con-

demn. In *Griffie v. Spanski* (1980), 84 Ill. App. 3d 118, 404 N.E.2d 1128, we held that when a township or road district seeks to condemn property in order to widen or otherwise alter a township road, the provisions of article 6, division 3, of the Illinois Highway Code (Ill. Rev. Stat. 1977, ch. 121, par. 6—301 *et seq.*) must be followed. We also held that the failure of the condemning authority to do so could be raised in the traverse to the petition to condemn. Respondents here maintain that petitioner lacked authority to condemn because it failed to follow those provisions of the Code.

Respondents' contention that petitioner did not comply with the provisions of article 6, division 3, rises from the following sequence of events and circumstances.

Section 6—303 of the Code (Ill. Rev. Stat. 1981, ch. 121, par. 6—303) sets forth two methods of initiating procedures whereby township roads may be widened or altered, or new roads laid out. One such procedure is initiated upon the issuance of a certificate by the Illinois Department of Transportation. That was not done here. The other is by petition of a required number of voters in the township or road district. Section 6—305 of the Code (Ill. Rev. Stat. 1981, ch. 121, par. 6—305) states that when such a petition is presented to the township or district highway commissioner, that officer shall hold a hearing upon prescribed notice. The commissioner is prohibited from approving the petition unless, after hearing the evidence, he finds that granting of the petition is in the "economic" and "public" interest and that certain persons residing within two miles of the portion of the road "proposed to be altered or vacated" will still have reasonable access to their farmland and to community and trade centers after the road is altered or vacated. Here, a proper petition was obtained at the request of the highway commissioner and presented to him. A hearing, upon proper notice, was held on November 10, 1982, and a memorandum of decision was signed by the commissioner and filed, as required, with the township clerk and a copy mailed to the county superintendent of highways. The memorandum of decision contained a finding that the proposed project was in the "economic" and "public" interest. Respondents maintain that any finding in regard to access was insufficient.

Section 6—307 of the Code (Ill. Rev. Stat. 1981, ch. 121, par. 6—307) states that upon the decision of the highway commissioner, and when as here, no appeal is taken, the commissioner shall cause a survey and plat of the road involved to be made. This was done here, but it was done before, rather than after, the hearing. In fact, the commissioner had not only done that, but had hired engineers and ob-

tained some of the rights-of-way necessary for the widening, before a petition was presented. The evidence indicated that the commissioner did not have advice of counsel when these things were done. Then, when he obtained counsel and was advised of the necessity of proceeding by petition, he instigated the circulation of petitions. Respondents maintain that these activities prior to the hearing deprived respondents of due process and vitiated the subsequent proceedings. They also assert that the requirements for the survey and plat were not met because they were done before, rather than after, the hearing.

We do not agree that the respondents' due process rights were violated. The essence of *Griffie* is that respondents were entitled to a hearing. The procedural deficiencies in this case would not, in any event, rise to the level of a deprivation of due process. Respondents maintain that the improper preliminary steps taken by the highway commissioner before the hearing rendered him unable to make a fair decision. They also assert that the commissioner lacked fairness because he had counsel prepare the form of the memorandum of decision prior to the hearing. Respondents do not argue that the hearing procedures of section 6—305 fail to meet due process requirements. Given the existence of the statutory provision that the highway commissioner must be the person to conduct the hearing, a situation much like the present is inevitable.

The nature of the commissioner's work is such that he will inevitably have some predilection as to what work is needed to maintain and improve the roads and will have taken part in trying to promote the change. There is no procedure for the commissioner to recuse himself and have someone else conduct the hearing. If we hold that the activity of the commissioner here prevented him from holding a hearing, then the project sought here could never be initiated by petition during the commissioner's tenure in office. Due process does not require a hearing officer to be completely independent of possible conflict of interest in a situation such as this. Furthermore, the prehearing drafting of a possible dispositional order or memorandum is not unusual in proceedings of this nature and does not indicate that the commissioner would not give fair consideration to the evidence.

We also conclude that the premature conduct of the commissioner did not render the proceedings invalid under the statute. In *Township of Hagener v. Meyer* (1946), 329 Ill. App. 508, 69 N.E.2d 516, the court held that under similar statutory provisions as those in article 6, division 3, a surveyor hired by the highway commissioner to survey land sought for township road purposes had no authority to go

upon the land sought prior to the holding of the required hearing. An order for an injunction prohibiting the landowners from interfering with the survey was reversed. Similarly, here, the respondents could have prevented surveyors from going on their lands, but petitioner's failure to follow the sequence of the statutory requirements does not make the survey inaccurate. Any expenses incurred by petitioner prior to the holding of the hearing might be subject to objection, but the premature conduct upon the part of petitioner does not preclude it from later proceeding properly. While the survey and plat were made prematurely, to require the petitioner to go to the expense of procuring another survey and plat made after the hearing and memorandum of decision would be neither logical nor efficient. See *Dickison v. Clark* (1936), 363 Ill. 258, 2 N.E.2d 91.

Respondents maintain that the memorandum of decision did not conform to the requirements of section 6—305 of the Code. The pertinent part of that section states:

> "No road shall be laid out, *widened, altered* or *vacated* unless the highway commissioner finds that such *alteration* or *vacation* is in the public and economic interest and further finds that any person residing or owning land within 2 miles of any portion of the road proposed to be *altered* or *vacated* shall still have reasonable access (but not necessarily a direct route) by way of a motor vehicle or other portable farm machinery commonly used in the area to farm land he owns or operates and to community and trade centers after the road is *altered* or *vacated*. Such findings shall be contained in the memorandum of decision signed by the highway commissioner." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 121, par. 6—305.)

In regard to the matter of access, the memorandum of decision found "that all persons residing or owning land within two miles of any portion of the road will still have reasonable access to community and trade centers after the road is altered." Thus, the memorandum's findings made no reference to access to land owned or operated by persons residing or owning land within the two-mile area.

■ Notably, the portions of section 6—305 requiring findings concerning access refer only to the alteration or vacation of a road, but not to the widening of such roads. The reason for this distinction is obvious. The altering of a road would ordinarily be considered to be a change in the course of the road. Such a change or the vacating of a road is likely to materially affect a farmer's access to fields or towns. This is clearly what the drafters of section 6—305 sought to prevent. Here, the petition and memorandum of decision both spoke of an al-

teration in the road, but the evidence showed only that the road's grade was to be changed and that the road was to be widened. This type of work would not affect access in any way, except directly from the field to the road. The landowners whose land was taken for right-of-way would be compensated for any loss of access that would result. If section 6—305 is interpreted to protect ingress and egress between field and road, then a township would have no power to improve a township road in a way that destroys the ingress and egress from a tract even when just compensation is paid. We do not interpret section 6—305 to have so intended.

■ Respondents also complain that petitioner failed to comply with section 6—902 of the Code (Ill. Rev. Stat. 1981, ch. 121, par. 6—902). It requires the highway commissioners of the county in cooperation with the county superintendent of highways to select bridges to be repaired under a system of priorities. That section lists the following priorities in respective order of importance: (1) the "safe and expeditious transportation of school pupils"; (2) the movement of farm equipment and produce; (3) mail delivery routes; and (4) traffic needs of the public. State funds appropriated for bridges must then be spent in the order of priority. The evidence showed that rather than proceeding in this manner, the previously mentioned officials adopted a system of selecting bridges by rotating the selections among the townships. However, unlike the procedure for widening, altering or vacating of roads within the township or road district, the award of money to the township cannot work to the detriment of the residents and landowners of the township which article 6, division 3, seeks to protect. Compliance with section 6—902 would not logically be a condition precedent to the exercise of the power of eminent domain. We hold that it is not. The source of funds to finance a condemnation is not material to the right to condemn. (*City of Chicago v. R. Zwick Co.* (1963), 27 Ill. 2d 128, 188 N.E.2d 489.) The traverse was properly denied.

■ The respondents in case No. 4—84—0350 also contend that error occurred in the jury trial to determine compensation and damages. They maintain that the testimony of the single appraiser for the petitioner should be disregarded because he (1) made no investigation of erosion; (2) was not "familiar with the Erosion Control Act"; and (3) did not take into consideration ingress and egress to one particular tract. These were matters relating to the weight to be given to the appraiser's testimony, but such matters did not require that the appraiser's testimony be stricken or disregarded. Any weakness in his testimony does not require that a new trial be granted. The verdict

was within the range of the testimony of the evaluation experts. *Lake County Forest Preserve District v. Continental Illinois National Bank & Trust Co.* (1976), 35 Ill. App. 3d 942, 343 N.E.2d 6.

We affirm for the reason stated.

Affirmed.

MILLS and WEBBER, JJ., concur.