# Illinois Official Reports

## Appellate Court

---

### *Boggio v. Mudge*, 2018 IL App (3d) 170432

---

| | |
|---|---|
| Appellate Court Caption | KEITH BOGGIO, DENISE BOGGIO, JAMES BOGNER and JOE BOGNER, Plaintiffs, v. MARK MUDGE, Granville Township Commissioner, and PATRICK G. SLOAN, Putnam County Engineer, Defendants-Appellees (Keith Boggio and Denise Boggio, Plaintiffs-Appellants). |
| District & No. | Third District<br>Docket No. 3-17-0432 |
| Filed | October 17, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Putnam County, No. 16-MR-61; the Hon. Thomas A. Keith, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Robert F. Russell, of Russell, English, Scoma & Beneke, P.C., of Princeton, for appellants.<br><br>No brief filed for appellees. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court.<br>Justice O'Brien specially concurred, with opinion.<br>Justice Schmidt dissented, with opinion. |

# OPINION

¶ 1      In accordance with the Illinois Highway Code, the highway commissioner for Granville Township, Mark Mudge, vacated 0.45 miles of the one-lane road, E. 1100th Street (the road), between N. 900 Avenue and N. 945 Avenue. Several interested parties appealed Mudge's decision by requesting a hearing before the Putnam County engineer, Patrick Sloan, who upheld Mudge's decision to vacate the road. The interested parties sought administrative review in Putnam County circuit court. The circuit court upheld the decision to vacate the short portion of the road. In this appeal, we are asked to review whether the Putnam County engineer's decision was clearly erroneous.

¶ 2      FACTS

¶ 3      On June 29, 2016, Mark Mudge, the highway commissioner for Granville Township, issued a road vacation certificate, which begins proceedings to vacate the road. On August 8, 2016, Mudge conducted a hearing on the matter at the Granville Township office.

¶ 4      Keith Boggio, Denise Boggio, James Bogner, and Joe Bogner, owners of the land adjacent to the road, attended the August 8, 2016, hearing and objected to the proposed closure of this portion of the road.

¶ 5      Following this hearing, Mudge issued an order vacating the road on August 9, 2016. The written document titled "Final Order of Road Vacation" contains preprinted boilerplate language that states a finding by Mudge that "said vacation is in the public and economic interest; and that all persons residing or owning land within two (2) miles of this road retains [*sic*] reasonable access to their property."

¶ 6      On August 12, 2016, the Boggios and the Bogners appealed the decision to the county highway superintendent, Patrick Sloan, on four grounds: (1) the Boggios would not have reasonable access to their land; (2) James Bogner would not have reasonable access to his land lying north of the creek; (3) Mudge failed to provide a legal description of the portion of the road that was proposed to be vacated; and (4) there had been no showing of a benefit to the public and economic interest of the citizens of Granville Township.

¶ 7      On September 8, 2016, Sloan held a hearing on the matter. At the hearing, Mudge introduced a letter from Illinois Valley Surveying and Consultants, dated June 17, 2016, that estimated the cost of constructing a new road to be $350,000. Mudge testified that repair of the road in question was not a priority for Granville Township and was not in the budget for the next year or two. Mudge stated that he might put a little gravel down. Mudge decided to vacate the road because "it washed out 20 years ago and we haven't done a thing to it and we don't—we don't have the money to fix it. It's economic reasoning on our part to vacate the road."

¶ 8      Following the evidence presented by Mudge, Keith Boggio, a farmer, testified that he and his wife, Denise Boggio, reside at 10746 N. 945th Avenue, Granville, Illinois, and have lived there for approximately 20 years. Mr. Boggio had traveled on the road in question since he was in eighth grade. The road is made up of gravel and dirt. The Boggios traveled the road to see cattle, go hunting, cut firewood, and look at the stars. Boggio testified that since a culvert in the road blew out approximately 30 years ago, the township had done no work on the road, and Boggio never requested that any work be done on the road. If the road was vacated,

Boggio would have to travel more than two extra miles to access his property south of the creek. To access his farmland north of the creek, Boggio now crosses a churchyard. The owners of the churchyard allow Boggio to cross the churchyard, but there is no written easement. Boggio's wife also testified during this hearing, and her testimony was consistent with her husband's testimony. The Boggios agreed that vacating the road was not in the public or economic interests of the people of Granville Township.

¶ 9 James and Joe Bogner also testified at the hearing before Sloan. James Bogner testified that he did not expect Mudge to fix the road and that he did not want to have the road vacated so he could still have legal access from both ends of the road on either side of the blown-out culvert. James Bogner further testified that there was no detriment if the road was not improved. Joe Bogner testified that, while he would not be opposed to having a new bridge built over the creek, he had no expectation that the road would be worked on. Joe Bogner did not believe vacation of the road was in the public or economic interest of the township. The Boggios and the Bogners believed vacation of the road would devalue their property if the land was subdivided for the construction of residences. The devaluation would be a result of the fact that the new properties would have to be serviced by a private drive instead of a township road.

¶ 10 Lastly, Mike Kelsey, a citizen of Granville Township, testified during the hearing. Kelsey stated that it would not be in the taxpayer's best interests to spend $350,000 on the road.

¶ 11 On September 20, 2016, Sloan issued a memorandum of decision upholding Mudge's decision to vacate the road. Sloan reasoned that the Boggios and the Bogners would still have reasonable access to their respective tracts of land despite the road's vacation. Sloan determined that Mudge provided a sufficient legal description of the road and that vacation of the road would eliminate the eventual $350,000 cost to reconstruct this segment of the road.

¶ 12 On October 13, 2016, the Boggios and the Bogners filed a complaint for administrative review of Sloan's decision. On June 1, 2017, the parties participated in a hearing before the trial court. Following this hearing, the trial court issued an order affirming the decision to vacate the small segment of the road at issue. The trial court affirmed Mudge's decision that the Boggios and the Bogners would still have reasonable access to their respective tracts of land. The court noted that the public has been unable to use the road for many years. At best, the trial court reasoned that this segment of the road "provides limited convenience solely to the Plaintiffs on an extremely limited basis, such as hunting." The court also found that the people of Granville Township would "necessarily have to expend an estimated $350,000" to make this segment of the road "passable."

¶ 13 On July 6, 2017, the Boggios filed a timely notice of appeal. Joe Bogner, a plaintiff in the complaint for administrative review, passed away during the pendency of this appeal. James Bogner, also a plaintiff in the complaint for administrative review, has chosen not to appeal the decision of the trial court.

¶ 14 ANALYSIS

¶ 15 In this appeal, the Boggios take issue with Sloan's findings. Specifically, the Boggios claim that Sloan's decision should be set aside on several grounds. The Boggios submit the evidence did not establish that vacating this small portion of the roadway created economic benefits for the public. In addition, the Boggios contend that vacating this small portion of roadway deprives the property owners of reasonable access to their property. In addition, the

Boggios submit the final order was deficient in other ways that are not outcome determinative.

¶ 16    When reviewing a final administrative decision, the appellate court's role is to review the administrative decision rather than the circuit court's decision. *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 847 (2007). A reviewing court may reverse an administrative decision where the administrative agency's legal determination was erroneous, its factual findings were against the manifest weight of the evidence, or its resolution of mixed questions of law and fact were clearly erroneous. *Village of Oak Brook v. Sheahan*, 2015 IL App (2d) 140810, ¶ 29. The agency decision is clearly erroneous only where the reviewing court is " 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Based on this authority, we are tasked with deciding whether Sloan's decision to uphold Mudge's vacation of the road was clearly erroneous.

¶ 17    Initially, we note that only appellant's brief was submitted to this court. However, because the record in this case is simple and the claimed errors are easily discernible, we choose to address the merits of this appeal. *Lynn v. Brown*, 2017 IL App (3d) 160070, ¶ 7.

¶ 18    With regard to the Boggios' opening contentions, section 6-305 of the Illinois Highway Code provides:

> "No road shall be laid out, widened, altered or vacated unless the highway commissioner finds that such alteration or vacation is in the public and economic interest and further finds that any person residing or owning land within 2 miles of any portion of the road proposed to be altered or vacated shall still have reasonable access (but not necessarily a direct route) by way of a motor vehicle or other portable farm machinery commonly used in the area to farm land he owns or operates and to community and trade centers after the road is altered or vacated. Such findings shall be contained in the memorandum of decision signed by the highway commissioner." 605 ILCS 5/6-305 (West 2016).

¶ 19    When the decision of the township highway commissioner is appealed to the county superintendent of highways, section 6-311 of the Illinois Highway Code provides:

> "Every order entered and filed pursuant to this Section in approval of the change requested in the petition shall contain an express finding that such alteration or vacation of the township or district road will be in the public and economic interest and will not deprive residents or owners of proximate land of reasonable access elsewhere as specified in Section 6-305 of this Act." 605 ILCS 5/6-311 (West 2016).

¶ 20    In this case, Sloan stated that the condition of this segment of the road would necessitate the township investing in the road at some point in the future unless the road was vacated at this time. Sloan reasoned that even though Granville Township had not maintained the road in recent times, the township retained the burden of costly maintenance to the dilapidating road approximated to be $350,000 on some future but undetermined date.

¶ 21    Generally, the best predictor of future behavior is past behavior. In the absence of a request to upgrade this segment of the road, it is extremely unlikely that the township would change course and begin spending funds on this small segment of the road. Based on a

well-established history, documented in this record, it is unlikely that the property owners would ask the township to do anything differently.

¶ 22    The purported economic benefit to the public that Sloan focused on is purely hypothetical unless the township has approved finite plans for improvements. For example, if Granville Township continues to stay the course, there will be no expense to keep the road open and no economic detriment to the public. However, if the township elects to level the road or put down new gravel, the economic detriment to the public would be much less than the hypothetical example discussed in this appeal.

¶ 23    Sloan's conclusion that there would be a substantial economic benefit for the public is contrary to the manifest weight of the evidence. The evidence proves there were not past expenses in the last two decades and no future planned expenditures for maintenance.

¶ 24    Based on the evidence presented during the hearing, we conclude there was no evidence in the record supporting Sloan's view that closing the road would result in a substantial economic benefit to the public.

¶ 25    The nature of our decision does not necessitate review of the other issues raised by the Boggios in this appeal.

¶ 26                                          CONCLUSION

¶ 27    The judgment of the circuit court of Putnam County is reversed.

¶ 28    Reversed.

¶ 29    JUSTICE O'BRIEN, specially concurring:

¶ 30    I write separately because I believe the county engineer's findings that adjacent landowners would still have reasonable access to their property after the road was vacated is clearly erroneous. Before a road can be vacated, section 6-305 of the Illinois Highway Code requires a finding that "any person residing or owning land within 2 miles of any portion of the road proposed to be *** vacated shall still have reasonable access (but not necessarily a direct route) by way of a motor vehicle or other portable farm machinery commonly used in the area to farm land he owns or operates and to community and trade centers after the road is *** vacated." 605 ILCS 5/6-305 (West 2016).

¶ 31    The findings of the Putnam County highway engineer were that a portion of the property would be accessible by all-terrain vehicle (ATV), the property could be accessed by another road if access was worked out with another township highway commissioner, there was access to the timbered portion through a short span of unvacated E. 1100 Street in the southeast corner of the property, and finally that access to one portion of the property was available via a grass waterway that was passable by farm machinery but difficult for grain wagons. None of these alternate theories of access satisfy the statutory requirement for reasonable access. See *Town of Cotton Hill Road District v. Hockenyos*, 130 Ill. App. 3d 379, 383 (1985) (noting that "the vacating of a road is likely to materially affect a farmer's access to fields or towns," which the statute is intended to prevent); *Chamness v. Mays*, 2014 IL App (5th) 130381, ¶ 35 (determinative factor in whether to vacate road was whether plaintiffs lacked legal right to alternate route to access their property); *Novosad v. Mitchell*, 251 Ill.

App. 3d 166, 175 (1993) (acknowledging value of additional access in discussion regarding public benefit of new road).

¶ 32 At the time of the hearing, the township highway commissioner and county highway engineer acknowledged that there was no current access from the adjacent road, described as N. 945 Avenue, to the Boggios' property. The engineer further determined, without evidence, that the tillable portion of the property could be accessed from N. 945 Avenue, a finding contrary to the Boggios' testimony that there was no access. There was also no evidence offered that the neighboring township would grant the Boggios a point of access to their property. Since there was no current alternate access via any other public highway, the finding as it relates to this piece of property is clearly erroneous. See *Novosad*, 251 Ill. App. 3d at 174 (administrative decision must not be based on facts, data, or testimony that do not appear in the record).

¶ 33 Likewise, the use of an ATV as the method of access to property does not satisfy the requirement of reasonable access. Since an ATV cannot be driven on public highways, any finding that the reasonable access requirement is satisfied by a finding that some of the property would be accessible by ATV after the road is vacated is clearly erroneous. See 625 ILCS 5/11-1426.1(a)(1) (West 2016). While a landowner may be able to utilize an ATV to access remote parts of their private property, section 6-305 contemplates a means of ingress and egress from private land onto a public highway and then upon that public highway to municipalities or places where the landowner would likely conduct business affairs. 605 ILCS 5/6-305 (West 2016). Using the findings set out by the highway engineer, the landowners would not have access from this tract using a vehicle that can be legally driven on a public highway, and for that reason, this finding is also clearly erroneous.

¶ 34 Lastly, access across a grass waterway can only occur when there is no water and the ground is dry. Since there was no testimony about how often that grass waterway is filled with water or is passable, this alternative method of access also falls short of the requirement for reasonable access. See *id.*

¶ 35 Because none of the findings regarding access to the property after the road was vacated established that the property owners would have reasonable access as required by the statute, I would reverse the decision of the county highway engineer on this ground and deny the application of the township highway commissioner to vacate this portion of the road.

¶ 36 JUSTICE SCHMIDT, dissenting:

¶ 37 I would affirm. There is a blown-out culvert. This road has remained unrepaired for 20-some-odd years. What about township liability?